OPINION OF THE COURT
Bernard F. McCaffrey, J.
This is a negligence action arising out of a May 20, 1994 accident wherein the plaintiff, a pedestrian, was blinded in one eye by an egg thrown from a moving automobile owned by defendant Eugene Peluso and permissively operated by defendant Patrick Peluso in which defendant Russell DiBenedetto was a passenger. The sole basis of liability alleged against defendant Eugene Peluso is Vehicle and Traffic Law § 388 which imposes vicarious liability against the owner of a motor vehicle for injury resulting from negligence in its permissive use or operation.
This area has been litigated throughout the country but, surprisingly, there appears to be little or no reported cases directly on point in this State. Further, there is no uniformity of opinion among the States which have addressed the issue as to when an alleged negligent act arises out of the "use or operation” of a vehicle.
On or about August 23, 1994, plaintiff commenced this personal injury action. The single cause of action alleges, inter alla, that defendants’ acts were negligent and that plaintiff’s injury was the "unintended consequences of defendants’ intentional act of throwing eggs from a moving vehicle” (fl 16).
Defendants Patrick Peluso and Russell DiBenedetto previously entered voluntary pleas to the charge of assault in the third degree (Penal Law § 120.00 [2]) that they "recklessly” caused physical injury to plaintiff. As the result of the differing criminal and civil standards of care, plaintiffs application for an award of summary judgment as to those defendants’ liability was previously granted by this court. (Graves v DiStasio, 166 AD2d 261 [1st Dept 1990].)
Plaintiffs present application seeks an award of summary judgment as to defendant Eugene Peluso’s individual vicarious liability pursuant to Vehicle and Traffic Law § 388 (1). Mr. Peluso has cross-moved to dismiss plaintiffs complaint against him.
Under certain circumstances, Vehicle and Traffic Law § 388 imposes civil liability on the absent owner of a negligently *241 used or operated vehicle when such use or operation results in death or injury. Specifically the statute provides, in part:
"Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.”
Vehicle and Traffic Law § 388 imposes liability upon an absent owner when four prerequisites are met: (1) death or injury to person or property, (2) the harm is the result of the operator’s negligence, (3) the negligence arose from the use or operation of the vehicle, and (4) the operator was using the vehicle with the owner’s permission.
The imposition of civil liability upon an absent owner is an expression of policy that one injured by the negligent use or operation of a motor vehicle should have recourse to a financially responsible defendant, i.e., the owner. (Aetna Cas. & Sur. Co. v Brice, 72 AD2d 927, affd 50 NY2d 958.)
Plaintiff alleges he was injured by the permissive but negligent "use and operation” of an automobile owned by Eugene Peluso. Thus, plaintiff contends, pursuant to Vehicle and Traffic Law § 388, defendant Eugene Peluso is civilly liable for his injuries.
Mr. Peluso is not bound by the infant defendants’ admission to reckless conduct which, by definition, includes negligence. Since he is not collaterally estopped from denying negligence, he has the right to present evidence to rebut plaintiff’s claim.
Plaintiff’s contention is that employment of the car as a means of transportation to and from the situs of the injury and as the place from which the eggs were thrown (i.e., "use” of the vehicle), plus the effect of the car’s speed and forward momentum (i.e., "operation” of the vehicle) on the velocity of the thrown egg, makes such use and operation a substantial factor in the production of the injury.
Among the jurisdictions which have determined that an accident or injury caused by objects thrown from a moving vehicle arose out of the "use or operation” of a vehicle are: (a) a remarkably similar case from California involving the use of an automobile by four teenage boys and the throwing of an egg from a moving car which resulted in a severe eye injury to a pedestrian (National Am. Ins. Co. v Insurance Co. of N. Am., 74 *242 Cal App 3d 565, 140 Cal Rptr 828 [1977]); (b) a Florida incident (Valdes v Smally, 303 So 2d 342 [Fla App 1974], cert denied 341 So 2d 975 [Fla 1977]) involving the death of a pedestrian from a beer mug thrown from a moving vehicle; and (c) a New Jersey case involving a bicyclist who was struck by a stick with a nail in it tossed from a moving vehicle (Westchester Fire Ins. Co. v Continental Ins. Cos., 126 NJ Super 29, 312 A2d 664, affd 65 NJ 152, 319 A2d 732).
Those decisions all emanate from declaratory judgment actions which construed standard automobile insurance policies and concerned whether, under the varying factual circumstances, the insureds were covered under the provision 7aris-ing out of ownership maintenance or use of the owned automobile” (emphasis supplied). Thus, none of the decisions appear to have involved a determination involving the issue of liability against an absentee owner on the basis of statutorily imposed vicarious liability. Moreover, those decisions are at least partially predicated on the fact that in those jurisdictions it was not necessary to establish proximate cause rather all that was required was a showing of a "substantial nexus” or, in the California decision, merely some minimal causal connection between the vehicle and the accident. They appear to be premised upon the general principle that insurance policies should be construed liberally in favor of the insured in order to afford purchasers a broad measure of protection. For example, the New Jersey Appellate Division in Westchester Fire Ins. Co. (supra) stated in part:
"We agree with the automobile carriers’ contention that the phrase 'arising out of the * * * use’ is not synonymous with 'while riding.’ As one court commented, such a construction would write from the contract the words 'arising out of.’ See Speiziale v Kohnke, 194 So.2d 485 (La.App. 1967).
"But we do not agree that the words 'arising out of the * * * use’ require or justify the interpretation that before coverage exists it must appear that the injury is a direct and proximate result, in a strict legal sense, of the use of the automobile * * *
"We consider that the phrase 'arising out of’ must be interpreted in a broad and comprehensive sense to mean 'originating from’ or 'growing out of the use of the automobile. So interpreted, there need be shown only a substantial nexus between the injury and the use of the vehicle in order for the obligation to provide coverage to arise. The inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the par *243 ties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected. See 7 Am.Jr.2d, § 82 at 387 (1963).” (126 NJ Super, at 37-38, 312 A2d, at 668-669, supra.)
Under similar fact patterns, numerous other foreign courts have found an insufficient causal relationship between the use or operation of the vehicle and the incident. In Government Empls. Ins. Co. v Melton (357 F Supp 416, affd 473 F2d 909), applying South Carolina law, "The court noted that the complaint alleged that one or more of the occupants in the rear of a pickup truck threw a bottle or bottles out of the rear of the truck and struck the injured parties. The court stated that a causal relation or connection has to exist between an accident or the injury and the use of the vehicle in order for the accident or injury to come within the meaning of the phrase 'arising out of the use’ of a vehicle. The court pointed out that the vehicle in question was not used for the purpose for which it was designed, for there could be no realistic conclusion that it was designed for the purpose of allowing, permitting, or encouraging bottles or other injurious matter to be thrown therefrom. The court thus concluded that the causal relationship between the use of the vehicle and the incident in question simply did not exist.” (Schaefer, Automobile Liability Insurance: What are Accidents or Injuries "Arising Out of Ownership, Maintenance, or Use” of Insured Vehicle, 15 ALR4th 10, § 9 [b].)
A variety of additional determinations from other jurisdictions holding that no causal relationship was present in the throwing of objects from a moving vehicle exist (e.g., Mazon v Farmers Ins. Exch., 107 Ariz 601, 491 P2d 455; Wirth v Maryland Cas., 368 F Supp 789; Speziale v Kohnke, 194 So 2d 485, writs refused 250 La 469, 196 So 2d 534, supra; McDonald v Great Am. Ins. Co., 224 F Supp 369 [which, applying Massachusetts law, stressed that the phrase "arise out of’ implied an element of causality, though not necessarily the proximate cause]).
A review of the aforementioned determinations from other jurisdictions reveals that the prevailing opinion of our sister States concerning insurance coverage for injuries from objects thrown from a moving vehicle in that an element of causality, though not necessarily the proximate cause, is required.
Such as in Westchester Fire Ins. Co., the New Jersey Appellate Division opined that: "In our mobile society the act of *244 throwing or dropping objects from moving vehicles is not such an uncommon phenomenon that such occurrence may not be anticipated, nor so inconsequential that members of the public need no financial protection from the consequences thereof.” (126 NJ Super, at 38-39, 312 A2d, at 669, supra.)
However, any such broadening of statutorily imposed vicarious liability in New York should be accomplished legislatively and not by judicial fiat.
In Matter of Manhattan & Bronx Surface Tr. Operating Auth. (Gholson) (71 AD2d 1004, 1005 [2d Dept 1979]), the Appellate Division, Second Department, enunciated a definition of "use or operation” for purposes of determining an insurer’s liability under standard automobile liability policies which is instructive for purposes of determining defendant Eugene Peluso’s potential vicarious liability pursuant to Vehicle and Traffic Law § 388.
In Gholson (supra), a bus driver was stabbed after refusing to allow a passenger to disembark at an unmarked stop. The Court held that the bus driver was not injured as a result of the use or operation of a motor vehicle. More specifically, the Court set forth the following test which must be met before finding "use and operation”: (1) the accident must have arisen out of the inherent nature of the automobile, as such; (2) the accident must have arisen within the natural territorial limits of an automobile and the actual use, loading or unloading must not have terminated; and (3) the automobile must not have merely contributed to the cause and the condition but itself must produce or be a proximate cause of the injury.
The second element of the Gholson test which deals with territorial limits seems to be satisfied by the facts of this case. The first and third elements, however, are not met. First of all, the inherent nature of an automobile is to serve as a means of transportation to and from a certain location, and not to serve as a "launching pad” to project foreign matter such as eggs. The term "inherent”, as defined by the Living Webster’s Dictionary of the English Language means "innate, existing inseparably within an object.” To say that the inherent nature of an automobile is to serve as a "launching pad” for eggs mischaracterizes the innate nature of a car. The injury here did not arise from the inherent nature of a car rather, the injury arose incident to an intentional act, i.e., the throwing of an egg.
With respect to element number three in the Gholson test dealing with causation, the car itself did not produce the injury *245 in question. Rather, the injury resulted from the occupant or driver intentionally throwing an egg out of the automobile. That is, the driving of the automobile was merely incidental. The car indirectly contributed to the injury which was brought about by the intentional assault of throwing the egg. Gholson (supra) states mere contribution to the incident does not constitute "use or operation”.
Furthermore, "where the operation of driving function of an automobile or the condition of the vehicle itself is not the proximate cause of the injury, the occurrence does not arise out of its use or operation.” (United Servs. Auto. Assn. v Aetna Cas. & Sur. Co., 75 AD2d 1022 [4th Dept 1980].) In that case, the injured party was a passenger in a vehicle hit in the eye by a wadded tinfoil gum wrapper thrown by another passenger while the vehicle was moving. The Court held that "use or operation” of vehicle was not shown to be a proximate cause of the injury. In Olin v Moore (178 AD2d 517 [2d Dept 1991]), it was held that where a passenger in a moving bus was bitten by a fellow passenger the injury did not arise from the use or operation of the vehicle. (See also, Horney v Tisyl Taxi Corp., 93 AD2d 291 [1st Dept 1983].)
Moreover, the issue before this court involves the strict construction of statute rather than the liberal interpretation applicable to coverage questions to insurer drafted policy provisions. Thus, section 388 is in derogation of the common law and therefore must be strictly construed. (Hanley v Albano, 20 AD2d 644.) It "need not and should not be read to subject non-negligent owners to every possible disadvantage that the joint-tort-feasors should be required to face.” (Caldararo v Au, 570 F Supp 39, 41.) Lastly, this section changing the common law by attributing negligence of the operator to the owner " 'may not be presumed to make any innovation upon the common law further than is required by the mischief to be remedied’ ”. (Sikora v Keillor, 17 AD2d 6, 8, affd 13 NY2d 610.)
Therefore, in order to impose vicarious liability under Vehicle and Traffic Law § 388 the "operation of driving function of an automobile or the condition of the vehicle itself’ must be the proximate cause of injury (United Servs. Auto. Assn. v Aetna Cas. & Sur. Co., 75 AD2d 1022, supra). While the use of Mr. Peluso’s vehicle may have contributed to the severity of plaintiffs injury and the infant defendants’ temporary escape, the proximate cause of plaintiff’s injury was the independent act of throwing the egg. Plaintiff’s injury did not therefore arise out of the "use or operation” of the vehicle pursuant to *246 section 388 and defendant Eugene Peluso, individually, is not vicariously liable for codefendants’ acts.
Plaintiff also alleges that Mr. Peluso is liable because "[t]he injury to the plaintiff’s eye was the unintended consequence of the defendants’ intentional act of throwing eggs from a moving vehicle” (fl 16). It is, however, undisputed that Mr. Peluso was not present at the time of plaintiffs injury and did not participate in the conduct complained of, i.e., throwing the egg. Accordingly, plaintiffs ampliation for an award of summary judgment against defendant Eugene Peluso individually is denied and Mr. Peluso’s cross motion for dismissal of plaintiffs complaint against him is granted.