Teondra L. WELLS, Individually and as Next Friend and Parent of Jahsiah Hardat; Douglas Wells, a Minor, by Tina Wells, His Next Friend and Parent; Tina Wells, Individually and as Next Friend of Douglas Wells; and Jahsiah Hardat, a Minor, by Teondra L. Wells, His Next Friend and Parent, Appellants,

v.

Tanya Whitaker a/k/a Tanya Wright, Defendant,

and

ENTERPRISE RENT–A–CAR MIDWEST, Appellee.

No. 03–0196.

Supreme Court of Iowa.

Dec. 10, 2004.

Rodney K. Maharry and Jami J. Hagemeier of Williams, Blackburn, Hudson & Maharry, P.L.C., Des Moines, for appellants.

Mark D. Lowe of Hopkins & Huebner, P.C., Adel, for appellee.

CARTER, Justice.

Teondra Wells; her minor child, Jahsiah; Douglas Wells; and Douglas's mother, Tina Wells, appeal from an adverse judgment on a jury verdict in their action against Enterprise Rent–A–Car Midwest (Enterprise), a car rental company. The plaintiffs' injuries were sustained when fireworks exploded in the vehicle owned by Enterprise and operated by Tanya Whitaker, who had rented a 1999 Chevrolet Blazer from Enterprise. At issue on the appeal is whether the district court erred in allowing the jury to determine by interrogatory answer that the damages being sought were not caused by the motor vehicle, as required by Iowa Code section 321.493 (1999), which provides for owner's liability "for damages done by any motor vehicle by reason of negligence by the driver, and driven with the consent of the owner." Also at issue is whether the rental agreement between Enterprise and Whitaker for lease of the vehicle in which the fireworks exploded negated consent for Whitaker to use the vehicle for an illegal purpose.

The jury did not respond to the second issue because it found that the damage to plaintiffs was not occasioned by the opera-

tion of a motor vehicle so as to impose liability on the owner under section 321.493. After reviewing the record and considering the arguments presented, we conclude that it appears from the evidence as a matter of law that the injuries sustained by plaintiffs were not caused by circumstances that give rise to an owner's liability claim under Iowa Code section 321.493. We therefore affirm the judgment of the district court.

## I. *Relevant Facts.*

On June 30, 2000, Tanya Whitaker rented a 1999 Chevrolet Blazer from defendant, Enterprise Rent–A–Car Midwest. Defendant was the owner of the Blazer. In the course of renting the Blazer, Whitaker signed a rental agreement with defendant.

The rental agreement was contained in a "jacket." The "rental jacket" was four pages in length. It consisted of a top white page, which was the contract; yellow and pink pages, which were copies of the contract; and a fourth page, which provided general information and advertising. Terms on the back of the contract prohibited the use of the rented vehicle for any illegal purpose. Specifically, the terms at paragraph 13 stated:

VIOLATIONS OF THE CONTRACT: A violation of the contract shall exist if the car is used or driven. . . .

(c) For any illegal purpose, in a race, speed contest, to tow a vehicle or trailer.

Additionally, on the front of the contract, directly above the signature line, notice was provided that there were terms on the reverse side of the contract. Specifically, the notice above the signature line stated:

I HAVE READ AND AGREE TO THE TERMS AND CONDITIONS ON BOTH SIDES OF THIS AGREEMENT.

Whitaker testified that she had rented a vehicle from defendant five to ten times prior to her rental of the Blazer on June 30, 2000. On her previous rentals, the same contract or a similar contract, with terms on the front and back, was used. She also testified that she knew the language on the reverse side of the contract was binding when she signed it. Finally, Whitaker testified that had she read paragraph 13 on the reverse side of the contract, she would have understood its meaning.

On the early morning of July 4, Whitaker, along with her boyfriend, Tyson Wells, drove to Missouri where Tyson purchased fireworks. This purchase consisted of firecrackers, bottle rockets, roman candles, arterial shells, and mortars (also referred to as cherry bombs). The amount of fireworks purchased filled four grocery bags and a crate.

Later on July 4, Whitaker and Tyson Wells took the fireworks to the home of Whitaker's mother, Loretta Nelson. That evening some of the fireworks were discharged at a park near Loretta Nelson's home. The remaining fireworks, a minimum of one full bag and one half full bag remained in the cargo area of the Blazer. When the family gathering at Loretta Nelson's home broke up, Whitaker drove in the Blazer to the area of Forest Avenue and Sixteenth Street in Des Moines. She was accompanied by O'Keitha Nelson, Tyson Wells, Teondra Wells, Douglas Wells, and Shunntae Averette. When they arrived at their destination, there were people discharging fireworks in the area, and some persons were aiming fireworks at the Blazer.

Tyson and Douglas Wells exited the Blazer and shot fireworks at people and vehicles in the neighborhood. Douglas Wells and a witness named David Fugate testified that some fireworks were being discharged from within the Blazer, but

Whitaker denied that. When the Blazer reached a position on Forest Avenue between Seventeenth and Eighteenth Streets the fireworks in the cargo area exploded, severely injuring some of the occupants in the Blazer, including plaintiffs Teondra Wells and Douglas Wells. Tyson Wells testified that the explosion was caused by fireworks thrown into the Blazer by a person standing on the street, but other evidence disputes that conclusion. David Fugate, an eyewitness on the street, testified that he recalled seeing a light flicker in the Blazer similar to a cigarette lighter immediately prior to the explosion.

Plaintiffs brought this action against both Whitaker and Enterprise. Based on the jury's determination of comparative fault, Whitaker was found to be liable for twenty percent of plaintiffs' damages. Plaintiffs urged that Enterprise should be vicariously liable for Whitaker's fault under the car owner's liability provisions contained in Iowa Code section 321.493. The trial court submitted an interrogatory to the jury in the following form:

Special Interrogatory No. 2

1. "Did Doug Wells sustain damage done by the motor vehicle by reason of the negligence of the driver, Tanya Whitaker?"

2. "Did Teondra Wells sustain damage done by the motor vehicle by reason of the negligence of the driver, Tanya Whitaker?"

The jury answered "No" to each of these questions. Based on those answers, plaintiffs' vicarious-liability claim against Enterprise was rejected. Other facts of significance will be discussed in our consideration of the legal issues presented.

## II. *Standard of Review.*

■ Alleged errors in jury instructions are reviewed for correction of errors at law. Iowa R.App. P. 6.4; *Sleeth v.*

*Louvar*, 659 N.W.2d 210, 213 (Iowa 2003). Error in giving or refusing to give a particular jury instruction does not merit reversal unless it results in prejudice to the party. *Herbst v. State*, 616 N.W.2d 582, 585 (Iowa 2000).

■ In an action tried at law, appellate review is for corrections of errors at law. Iowa R.App. P. 6.4. "Findings of fact in a law action ... are binding upon the appellate court if supported by substantial evidence." Iowa R.App. P. 6.14(6)(*a*). Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion. *Beal Bank v. Siems*, 670 N.W.2d 119, 125 (Iowa 2003).

## III. *Whether the District Court Erred When It Submitted Special Interrogatory No. 2 Requiring that Plaintiffs Prove Their Damages were "Done By" the Motor Vehicle.*

■ Plaintiffs contend the trial court erred in submitting Special Interrogatory No. 2 to the jury. They urge that this interrogatory required the jury to find an unwarranted element of proof that is not required by Iowa law. They maintain that vicarious liability of a motor vehicle owner only requires two elements: (1) plaintiff's damages result from the negligence of the driver of a vehicle, and (2) the owner of the vehicle consented to the driving. In support of their two-element theory, plaintiffs rely on *Iowa Mutual Insurance Co. v. Combes*, 257 Iowa 135, 131 N.W.2d 751 (1964). Specifically, they base their claim on the following language contained in that opinion:

We have never held an owner who consents that his car be driven by another is not liable under section 321.493 for damage done by the driver's negligence if the latter is an independent contractor. The statute makes no such exception and we should not engraft one upon

it. The only facts which must be proven to render the statute applicable are 1) damage done by negligence of the driver, and 2) the owner's consent to the driving.

*Combes,* 257 Iowa at 144, 131 N.W.2d at 756. The claim against the motor vehicle owner in *Combes* resulted from a collision between a truck and two other vehicles. The damages sought were those caused by that collision. As a result, the critical issue involved in the present case concerning whether the damages claimed were "done by any motor vehicle" was not involved in the litigation.

Iowa Code section 321.493(1)(*a*) provides in pertinent part:

> [I]n all cases where damage is *done by any motor vehicle* by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage....

(Emphasis added.) We have indicated that the purpose of section 321.493 is "to protect an innocent third party from the careless operation of a motor vehicle and to make the owner responsible for the negligence of one to whom the owner entrusted its operation." *Briner v. Hyslop,* 337 N.W.2d 858, 870 (Iowa 1983). In speaking to the scope of section 321.493 in *Stuart v. Pilgrim,* 247 Iowa 709, 74 N.W.2d 212 (1956), we stated:

> Our statute, section 321.493, supra, by its terms operates only when the consent driven car does some damage. So if it collided with another vehicle without injuring the latter or its occupants, or if the driver of another vehicle in some negligent manner occasioned damage to the consent driven automobile without a direct collision between the two cars, our owner's responsibility statute would have no application. It is only *"where damage is done* by any car by reason of

the negligence of the driver" that it comes into play.

*Stuart,* 247 Iowa at 717, 74 N.W.2d at 217; *accord Lanz v. Pearson,* 475 N.W.2d 601, 606 (Iowa 1991) ("[statute] applies only when damage has been done by the car") (quoting *Stuart,* 247 Iowa at 715, 74 N.W.2d at 216); *Phillips v. Foster,* 252 Iowa 1075, 1080, 109 N.W.2d 604, 606 (1961) ("[U]nder our consent statute an owner is liable for the actionable damage done by his car.").

■ Although our discussion in *Stuart* may have been dictum, we are satisfied that it does fairly describe the applicability of section 321.493. As Enterprise points out, vicarious liability under that statute only extends to damage "done by any car" by reason of the negligence of the driver thereof. To adopt plaintiffs' interpretation of the statute would be to ignore a significant condition of the liability that the statute imposes.

Owner's liability cases from New York and Connecticut support our conclusion. The New York owner's liability statute interpreted in *Levitt v. Peluso,* 168 Misc.2d 239, 638 N.Y.S.2d 878 (N.Y.Sup.Ct.1995), provided in pertinent part:

> Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle ... by any person using or operating the same with the permission, express or implied, of such owner.

N.Y. Veh. & Traf. § 308 (1991). In the *Levitt* case, the plaintiff was blinded in one eye by an egg thrown from a moving automobile owned by defendant and driven by another with his consent. The court refused to impose vicarious liability against the owner of the car under that state's owner's liability statute. In denying re-

covery, the court stated that, in order for vicarious liability to attach under the statute, "the operation or driving function of an automobile or the condition of the vehicle itself" must be the proximate cause of the injury. *Levitt,* 638 N.Y.S.2d at 882.

The Connecticut owner's liability statute interpreted in *Hughes v. National Car Rental Systems, Inc.,* 22 Conn.App. 586, 577 A.2d 1132 (1989), provided in pertinent part:

> Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner.

Conn. Gen. Stat. § 14–154a (1985). In *Hughes* a car was rented from the defendant, and the renter of the car loaned it to an acquaintance that drove the car alongside another vehicle and fired a revolver into the passenger side of the car it was traveling next to, causing injury to the driver of that vehicle. *Hughes,* 577 A.2d at 1133. The court held that, even though the rented car was in operation within the meaning of the statute at the time of the shooting, the injured plaintiff's allegations did not "support the conclusion that the operation of the motor vehicle was the proximate cause of the plaintiff's injuries." *Id.,* at 1135. Although the language of the New York and Connecticut statutes differs somewhat from that contained in Iowa Code section 321.493, our statute contains an even more specific limitation on the cause of the damages for which a vicarious liability will be recognized.

We conclude that viewing the facts most favorably to plaintiffs, the circumstances that caused their injuries do not create a vicarious liability under section 321.493. The fact that plaintiffs' injuries occurred in the motor vehicle while it was being driven is not sufficiently related to the operation or condition of the vehicle so as to fall within the provisions of that statute. Enterprise raised this issue by a motion for directed verdict in the trial court. The trial court denied the motion and submitted the issue to the jury by special interrogatory. In so doing, it treated plaintiffs more favorably than the facts warranted. Consequently, there was no prejudice in submitting Special Interrogatory No. 2 to the jury. We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**