CLERK OF SUPREME COURT

JAN 25, 2017

ELECTRONICALLY FILED

# IN THE COURT OF APPEALS OF IOWA

No. 15-1344
Filed January 25, 2017

**SAMIR M. SHAMS,**
        Plaintiff/Counterclaim Defendant-Appellant,

**vs.**

**SONA HASSAN,**
        Defendant/Counterclaimant-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Jeanie Kunkle Vaudt,
Judge.

Sona Hassan appeals from judgment entered against her on claims by
Samir Shams of conversion, breach of fiduciary duty, and breach of oral contract.
**REVERSED AND REMANDED FOR NEW TRIAL.**

Steven C. Reed of the Law Offices of Steven C. Reed, Des Moines, for
appellant.

Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West
Des Moines, for appellee.

Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**DANILSON, Chief Judge.**

Sona Hassan appeals from judgment entered against her on claims by her brother, Samir Shams, for conversion, breach of fiduciary duty, and breach of oral contract. Hassan contends the trial court erred in refusing to submit a proposed jury instruction on the statute-of-limitations affirmative defense. Because we conclude Hassan was entitled to submission of a jury instruction or interrogatory on the statute-of-limitations theory, we reverse.

**I. Background Facts & Proceedings.**

This matter stems from the breach of one or two oral agreements between siblings Shams and Hassan. Shams was going overseas to work. In 2003, Hassan agreed to manage a checking account for Shams for the sole purpose of providing money for Shams' children and Shams' personal expenses. Shams signed three booklets of checks—left otherwise blank—and gave them to Hassan to use. Shams went abroad sometime in April or May 2003.

In May 2006, Shams returned to the United States and, while visiting Hassan in Maryland, inquired about the statements for his bank account. Hassan did not have the bank statements because they were sent to their brother in Arizona. While subsequently visiting his brother in Arizona, Shams did not receive the bank statements, but was given a record of checks that indicated funds had been withdrawn and paid to bank accounts belonging to Hassan. Shams testified that when he returned to Maryland in June 2006 he asked Hassan about his money. Hassan informed Shams his money was safe, she had used it to purchase a piece of land they would divide and sell for profit, and Shams would receive a return on the investment. Hassan told Shams if he

needed money she would provide it to him, and all of his money would eventually be returned.

Pursuant to this understanding or agreement, in 2009, Shams requested $50,000 to purchase a house, and Hassan provided the requested amount. However, when Shams requested the return of all of his remaining money in 2010, Hassan denied the request and told Shams his money had been spent.

The evidence in the record reflects that while managing Shams' checking account, Hassan wrote many checks payable to herself, totaling $269,980.66.

Shams filed the petition in this matter on July 26, 2011, asserting claims for breach of oral agreement, conversion, bad faith, fraud, and breach of fiduciary duty. Jury trial was held March 30 through April 10, 2015. At the close of testimony, the parties made a record on jury instructions. Counsel for Hassan submitted a proposed jury instruction on the statute-of-limitations affirmative defense:

> The defendant has raised as a defense to the plaintiff's claims of oral contract, conversion, fraud and breach of fiduciary duty that the plaintiff cannot prevail on that claim because he did not bring suit on that claim with[in] the time allowed by the law. There are state statu[t]es that specify how much time a person has to bring certain kinds of claims. These are called statutes of limitation. A person cannot recover on a claim that is brought after the time period that applies to a particular claim, even if it is only one day late. The statute of limitation that applies [to] each of the above claims provides that the claim must be brought within 5 years of the date the incident occurred. The plaintiff brought his suit against the defendant on July 26, 2011. A claim for oral contract, conversion, fraud, and breach of fiduciary duty, based on acts or occurrence that took place more than 5 years before that date is barred by the statute of limitation[s]. You must decide when each act or occurrence on which the plaintiff bases his claim occurred. If any of these acts or occurrences took place more than 5 years before the plaintiff brought suit, then a claim based on that act or occurrence is barred by the statute of limitation[s].

On the issue of the proffered jury instruction, the trial court stated:

Mr. Shams is contending that there was a breach of agreement, and the other claims that roll along with that that he has pled, as a consequence of conversation that was had allegedly between him and the defendant concerning the return of his money after there had been, again allegedly, some investment in real estate, and that occurred later than a date that would trip the statute of limitations that [counsel for Hassan] is arguing is applicable.
   . . . I am going to let the case go to the jury without the instruction that [counsel for Hassan] has proposed for the reasons that, A, it's not a stock; B, I don't think it applies; and C, as it is drafted, I believe the jurisdictions that [counsel for Hassan] found the instruction located in, used it for purposes that were not associated with the kinds of claims we have asserted here.
   So for all of those reasons, I am not going to submit that instruction to the jury.

On April 13, 2015, the jury entered its verdict for judgment against Hassan on the conversion, breach of fiduciary duty, and breach of contract claims, and ordered payment of damages to Shams in the amount of $148,501.60. On April 27, 2015, Hassan filed a motion for judgment notwithstanding the verdict and motion for new trial. The trial court entered judgment on May 13, 2015. Hearing on the posttrial motions was held on May 15, 2015. In its July 14, 2015 order on Hassan's posttrial motions, the court again addressed the statute-of-limitations jury-instruction issue. The court held:

The statute of limitations instruction [Hassan] proposed was properly withheld from the jury as to all of [Shams'] claims she asserts it applied to. This proposed instruction is not the law in Iowa and does not include the discovery rule. Furthermore, the evidence presented was sufficient for the jury to conclude that [Shams] and [Hassan] entered into a new oral agreement in June of 2006, and his claims for breach of contract, conversion, and breach of fiduciary duty occurred in 2010 when [Hassan] declined to return additional money to [Shams].

Hassan now appeals, asserting the trial court erred in refusing to submit the proposed jury instruction on the statute-of-limitations theory.

**II. Standard of Review.**

"[W]e review refusals to give a requested jury instruction for correction of errors at law." *Alcala v. Marriot Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016).

**III. Analysis.**

The district court must give a requested jury instruction if the instruction (1) correctly states the law, (2) has application to the case, and (3) is not stated elsewhere in the instructions. *Beyer v. Todd*, 601 N.W.2d 35, 38 (Iowa 1999); *see Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 5 (Iowa 2009) ("It is error for a court to refuse to give a requested instruction where it 'correctly states the law, has application to the case, and is not stated elsewhere in the instructions.'" (citation omitted)). "Parties are entitled to have their legal theories submitted to a jury if they are supported by the pleadings and substantial evidence in the record." *Beyer*, 601 N.W.2d at 38. "When we weigh the sufficiency of the evidence to support a requested instruction, we review the evidence in the light most favorable to the party seeking the instruction." *Weyerhaeuser Co. v. Thermogas Co.*, 620 N.W.2d 819, 824 (Iowa 2000). "Error in giving or refusing to give a particular jury instruction does not merit reversal unless it results in prejudice to the party." *Wells v. Enter. Rent-A-Car Midwest*, 690 N.W.2d 33, 36 (Iowa 2004).

We therefore consider whether there was substantial evidence in the record supporting submission of Hassan's statute-of-limitations jury instruction.

Under application of the discovery rule, Hassan contends the Iowa Code section 614.1(4) (2011) five-year statute of limitations began to run in June 2006 when Shams was aware of checks indicating Hassan had withdrawn funds from his account paid to Hassan. Shams asserts the parties reached a new agreement in June 2006 by which Shams allowed Hassan to use his money, understood any funds from his account would be paid to him upon request, and believed all of his money would eventually be returned. Shams contends his causes of action did not accrue until he was told his money was all gone.

A cause of action does not begin at the time of contracting but when the cause of action "accrue[s]." Iowa Code § 614.1; *see Bob McKiness Excavating & Grading, Inc., v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 408 (Iowa 1993) ("It is well settled that no cause of action accrues under Iowa law until the wrongful act produces loss or damage to the claimant."). Accordingly, whether Shams' claims arise out of the original agreement in 2003—or a subsequent agreement in 2006 as urged by Shams—the statute of limitations begins when the cause of action accrues.

The parties also debate when Shams was aware of the cause of action because, as both parties acknowledge, Iowa follows the discovery rule.

> Under the discovery rule, the statute of limitations begins to run when the injured person discovers or in the exercise of reasonable care should have discovered the allegedly wrongful act. . . . The rule is based on the theory that a statute of limitations should not bar the remedy of a person who has been excusably unaware of the existence of the cause of action.

*Franzen v. Deere & Co.*, 377 N.W.2d 660, 662 (Iowa 1985) (citations omitted).

Thus, "[u]nder the discovery rule, 'the statute of limitations does not begin to run until the injured person has actual or imputed knowledge of all the elements of the cause of action.'" *Hook v. Lippolt*, 755 N.W.2d 514, 521 (Iowa 2008) (quoting *Franzen*, 377 N.W.2d at 662). "[L]imitations begin to run when a claimant gains knowledge sufficient to put [the claimant] on inquiry." *Franzen*, 377 N.W.2d at 662 (citation omitted). Moreover, a cause of action for fraud, one of Shams' claims, is not "deemed to have accrued until the fraud . . . complained of shall have been discovered by the party aggrieved." Iowa Code § 614.4.

Here, neither party disputes Shams became aware his money was missing from his bank account when he visited the United States in 2006. Although Shams knew at that point his money had not been expended solely for his children or his own needs, he asserts this was not the injury upon which he bases his claims. Sham contends that after June 2006 he believed his money would be returned to him upon request because it simply existed in another form, namely, a real-estate investment. Shams testified as to his understanding in June 2006:

> Q. Did you discuss with her what happened to your money? A. Yes.
> Q. Okay. What did you ask her? A. Said, what happened to my money?
> Q. Okay. And what did she say? A. She said, your money's safe. Your money is safe. And I—we both—we went to buy a piece of land connected to the house we bought in Rose Lane.
> . . . .
> Q. Okay. What did—during this conversation did she tell you anything about how your money was going to be kept safe? A. By using my money for to buy the land.
> Q. Okay. Did she tell you anything about how you could get your money back? A. Said after we divide the land to six pieces, you're going to have a piece, which you are going to sell it for

$300,000, each one. That means you're going to double your money.

Q. Okay. Did she say anything about what you could do in the meantime since you didn't have access to your money? A. She said in the meantime, I'm going to open checking account. She put me in an account with Chevy Chase Bank, and she's going to deposit $1000 a month for my own use when I go overseas.

. . . .

Q. Did she ever indicate to you that if you needed money, you just had to ask her? A. Yes.

Consequently, after Shams became aware of the money missing from his account, he questioned Hassan and she assured Shams the money was invested in real estate to his benefit and would ultimately be returned to him. Whether Shams was diligent and used reasonable care to investigate when he first discovered checks had been written on his account contrary to his instructions was an issue not addressed by the jury. If presented with the issue, the jury could have determined that Shams did not need to investigate further due to Hassan's additional misrepresentations, his familial relationship with Hassan, and Hassan's perpetuation of Shams' belief that his money was available to him by providing the requested $50,000 to Shams in 2009. The jury could have concluded Shams only became aware of his injury in 2010 when he requested the return of all of his money and was told there was nothing left. Notwithstanding, considering the evidence in a light most favorable to Hassan, the jury may have concluded that a reasonable person would not rely upon further representations by Hassan after discovering what appeared to be embezzlement of Shams' monies in bank account. Viewing the evidence in the light most favorable to Hassan, we conclude Hassan's assertion that the statute

of limitations began to run in June 2006 was supported by substantial evidence, entitling Hassan to a jury instruction on the statute-of-limitations theory.

We acknowledge, however, Hassan's proposed jury instruction did not fully state Iowa law. Significantly, the proffered jury instruction did not accurately define the discovery rule and, upon these facts, reversible error would have existed if the jury had been instructed as proposed by Hassan without also correctly instructing on the discovery rule. But our concern is with Hassan's legal theory—that the claims were barred by the statute of limitations—not the sufficiency of the evidence to support the instruction itself. "The court is required to instruct the jury as to the law applicable to all material issues in the case." Iowa R. Civ. P. 1.924. The applicability of the statute of limitations and the question whether the limitation period was tolled, were material issues supported by the pleadings and substantial evidence in the record. *Beyer*, 601 N.W.2d at 38. Without an instruction or interrogatory related to the statute of limitations, Hassan was unable to defend against the claims on this theory.

One authority has aptly summarized when a statute-of-limitations issue may be a question for the court or a question for the jury:

> Ordinarily, whether or not a cause of action is barred by the statute of limitations is a mixed question of law and fact and may be either, according to the manner in which it is presented. Where the facts are not disputed, the question of whether the case is within the bar of the statute of [limitations] is one of law for the court, provided that the question is properly presented by the pleadings. Where, however, the facts are in doubt or in dispute, the question is not one of law but is one of fact to be determined by the jury or by the court where the trial is before the court alone.
> The validity of a limitations defense or the application of a statute of limitations is a question of law, and the decision as to whether a particular statute of limitations is applicable to an action is a matter of law. If, however, the application of a statute of

limitations rests on questions of fact, it is generally an issue for a jury to decide. Particular matters have been found to be questions of fact for the trier of fact, such as whether the plaintiff did not know or should not have reasonably known the facts underlying the cause of action in time to reasonably comply with the limitations period; whether or not the plaintiff prosecuted the suit diligently after it was filed; whether the statute of limitations was tolled by the conduct of the defendant; whether an estoppel exists, preventing application of the statute of limitations to bar the plaintiff's claim, if more than one reasonable inference can be drawn from the evidence offered on such issue; and whether or not the plaintiff was under a personal disability at the time the cause of action accrued so as to suspend the running of the statute of limitations.

54 C.J.S. *Limitations of Actions* § 437 (2016) (footnotes omitted).

Here, we have a factual dispute whether the statute of limitations had expired or was tolled, and the jury should have been instructed on the issues in some manner such as written interrogatories. *See Vertman v. Drayton*, 272 N.W. 438, 440 (Iowa 1937) ("Before it could be determined whether the plaintiff's action was barred by the statute of limitations, it was necessary that several fact questions be determined, among which are concealment by the defendant of a cause of action against him in favor of the appellant, and of facts he was bound to disclose; when plaintiff discovered the fraud, and whether there was failure on her part to use due diligence in discovering the wrong. The determination of the facts was for the jury."); *see also Dillon Cty. Sch. Dist. No. Two v. Lewis Sheet Metal Works, Inc.*, 332 S.E.2d 555, 561 (S.C. Ct. App. 1985) ("The question of whether a defendant's conduct lulled a plaintiff into a false sense of security and thereby prevented the plaintiff from filing suit within the statutory period is ordinarily one of fact for a jury to determine."), *overruled on other grounds by Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Div. of Unidynamics Corp.*, 462 S.E.2d 858 (S.C. 1995); *see also Pavone v. Kirke*, 801 N.W.2d 477, 496-497

(Iowa 2011) (explaining the use of general verdicts, special verdicts, and general verdicts with interrogatories).

**IV. Conclusion.**

We conclude the district court erred in refusing to submit the statute-of-limitations legal defense as raised by Hassan, and we reverse for a new trial.

**REVERSED AND REMANDED FOR NEW TRIAL.**



State of Iowa Courts

**Case Number**     **Case Title**
15-1344             Shams v. Hassan

Electronically signed on 2017-01-25 09:16:19