Richard C. SUMMY and Christine
M. Summy, Appellees,

v.

CITY OF DES MOINES,
Iowa, Appellant.

No. 03–1807.

Supreme Court of Iowa.

Jan. 13, 2006.

Mark Godwin, Deputy City Attorney, Des Moines, for appellant.

Edward M. (Ted) Spellman and Martin E. Spellman of Spellman, Spellman, Spellman, Spellman, Kealhofer & Spellman, Perry, for appellees.

TERNUS, Justice.

The appellee, Richard C. Summy, was seriously injured during a golf outing when he was struck by a golf ball hit by another player. Summy successfully sued the owner of the golf course, appellant City of Des Moines. The City has appealed, alleging several grounds for reversal: (1) the district court erred when it eliminated all Des Moines property owners from the trial jury; (2) the court erred in submitting the case under the theory the City failed to protect an invitee from the harmful act of a third person rather than under the theory the plaintiff was harmed by a condition on the premises; (3) the court abused its discretion in refusing to instruct the jury on sole proximate cause or to allow the defendant to discuss this concept in opening statement; and (4) the court erred in failing to direct a verdict on the grounds the City was immune from liability and the City owed the plaintiff no individual duty to protect him from the ordinary risks inherent in the game of golf. Upon our review of the record and consideration of the arguments of the parties, we affirm.

I. *Background Facts and Proceedings.*

On June 5, 2000, Summy was playing golf at the City-owned Waveland Golf Course when he was struck in the eye with a golf ball. Summy was on the eighteenth fairway at the time. The ball was hit from the tee on the first hole by another golfer,

Richard Thomas. Summy sued the City,[1] alleging it

> had designed, operated, and maintained the Waveland Golf Course in an unreasonably dangerous condition in that a golfer engaging in golfing activities on the 18th golf hole was at unreasonable risk of being struck by a golf ball struck by a golfer from the tee box of the first hole of the golf course.

The plaintiff alleged a number of specific ways in which the City was negligent. The City answered, raising several affirmative defenses, including comparative fault, sole proximate cause, and immunity under Iowa Code chapter 670 (1999).

Subsequently, the City filed a motion for summary judgment on the basis of the immunity granted in section 670.4(10) for liability based on the "issuance of a permit, inspection, investigation, or otherwise . . . if the damage is caused by a third party." Iowa Code § 670.4(10). The City also asserted that it owed Summy no duty to protect him from the "ordinary and ever present risks of the sport of golf." Relying on the duty imposed on possessors of land by Restatement (Second) of Torts section 344 (1965), the district court rejected the City's argument that it owed no duty to the plaintiff. The court also concluded the statutory immunity asserted by the City was not applicable.

Prior to trial, the plaintiff filed a motion to limit prospective jurors to nonresidents of the City of Des Moines in view of his severe injury and the potential for a high verdict against the City. Although the court denied the plaintiff's request to remove all residents of the City from the jury panel, the court ruled that property owners in the City would be excused from the panel. Immediately before trial, the City challenged the jury panel, arguing the removal of "all jurors who were property owners in the City of Des Moines" was "a material departure from the statutory requirements for drawing or returning a jury." This challenge was rejected by the trial court.

The plaintiff also filed a motion in limine before trial asking the court to prohibit the defendant from mentioning or arguing that the actions or failure to act of the other golfer—Thomas—constituted a proximate cause of the plaintiff's injuries. The court agreed that the other golfer's negligence was not at issue, noting that Thomas was not a party to the lawsuit and sole proximate cause would not be an issue in the case.

At trial Summy introduced evidence that the design of the golf course called for a tree barrier between the first and eighteenth fairways. Although such a barrier had existed at one time, sixty to eighty mature trees in the area between these fairways died in the 1960s. In June 2000, there were a few small trees between the first and eighteenth fairways, but according to the plaintiff's witnesses these trees were not a sufficient protective barrier. Even one of the City's witnesses acknowledged there was a hazard in the area of fairway eighteen from being hit by a shot off tee number one. Summy's experts testified that the two fairways had overlapping areas of play and that it was absolutely foreseeable that golf balls hit from the first tee would travel into the area where Summy was hit due to the overlapping playing areas and the lack of heavy trees between the fairways. The experts also identified several ways in which the safety in this area could have been improved. In addition, evidence was presented that the City had no inspection or safety program, and no one was respon-

---

1. Summy's wife is also a plaintiff, but we refer to Summy alone for simplicity's sake.

sible for identifying hazards on the course so protective measures could be implemented.

The record also contains evidence in support of the City's comparative fault defense. At the time Summy was hit by the golf ball, he was twenty feet from the rough in between the eighteenth and first fairways and approximately 150 yards from the white tee box of the number one hole. Summy testified that he saw individuals warming up on the number one tee, but he focused his attention on his golfing partner even though he was aware that a golfer could get hit by balls shot from adjacent fairways. Summy admitted that had he looked toward the number one tee when Thomas was teeing off, he could have seen Thomas swinging his club, as nothing would have blocked Summy's view. On the other hand, Summy believed that if Thomas had yelled "fore," there was a possibility that Summy would have had time to react and prevent the injury. Thomas testified that he did not yell "fore" when his shot veered into the eighteenth fairway because he had not noticed anyone in that location.

The City made motions for directed verdict at the proper times, raising the same arguments made in its motion for summary judgment. The trial court refused to grant a directed verdict to the defendant.

The jury found both Summy and the City at fault. Summy was held twenty-five percent at fault, and the City was found seventy-five percent at fault. The trial court entered judgment for the damages found by the jury, reduced by the plaintiff's fault, and the City appealed.

II. *Jury Selection.*

A. *Issue.* The City renews its challenge to the trial jury on appeal. The defendant claims the trial court ignored two statutory edicts and a rule of civil procedure when it

excused Des Moines property owners from the jury panel. *See* Iowa Code § 607A.3(7) (defining "panel" as "those jurors drawn or assigned for service to a courtroom, judge, or trial"). The City relies on Iowa Code section 624.11A, which specifies the circumstances under which a juror may be challenged based on the juror's taxpayer status, and on Iowa Code section 607A.2, which prohibits the exclusion of persons from jury service based on the person's "age if the person is eighteen years of age or older, race, creed, color, sex, national origin, religion, *economic status,* physical disability, or occupation." (Emphasis added.) Finally, the defendant argues Iowa Rule of Civil Procedure 1.915(6) sets forth the reasons that a party may challenge a potential juror for cause and none of those reasons include *potential* bias or prejudice.

B. *Error preservation.* Because the plaintiff insists the defendant did not preserve error on its challenge to the court's action in striking property owners from the jury panel, our analysis begins with rule 1.915(4), which states:

> Before any juror is sworn, either party may challenge the panel, in writing, distinctly specifying the grounds, which can be founded only on a material departure from the statutory requirements for drawing or returning the jury.

Iowa R. Civ. P. 1.915(4). The plaintiff claims the defendant failed to comply with this rule in two particulars: (1) the City's *written* objection was not filed until after the jury had been selected, although an oral objection had been made immediately before trial; and (2) the City's motion did not identify the two statutes that the City now claims prohibited the exclusion of Des Moines property owners from the jury panel.

We think rule 1.915(4) does not apply to the City's objections. That rule states a challenge to the panel "can be founded only on a material departure from the requirements *for drawing or returning* the jury." Iowa R. Civ. P. 1.915(4) (emphasis added). The term "drawing" refers to the procedure incident to the "actual drawing of names of eligible jurors" from, for example, a jury wheel, and the term "returning" refers to the procedure followed to summon into court the jurors drawn. *See People v. Hetenyi*, 36 Misc.2d 518, 235 N.Y.S.2d 164, 166 (N.Y.County Ct.1949) (interpreting similar New York rule). *See generally* Iowa Code ch. 607A (outlining procedures for drawing and returning a jury). The City has not claimed noncompliance with the procedural requirements set forth in chapter 607A for drawing and returning the jury. *Cf. State v. Morgan*, 559 N.W.2d 603, 610 (Iowa 1997) (defendant contended the method by which the jury list was compiled failed to follow the "random selection" requirement of section 607A.10); *State v. Lohr*, 266 N.W.2d 1, 2 (Iowa 1978) (defendant claimed noncompliance with statutorily prescribed procedure for drawing of list from which defendant's trial jury was ultimately chosen). Rather, the defendant's challenge is to the method of selecting the *trial* jury, namely, granting the plaintiff's challenge for cause to all city property owners. Consequently, the special requirement of a writing distinctly specifying the grounds for an objection to the drawing and returning of the jury panel does not apply.

The City's objection was clearly sufficient under our regular error preservation rules, which require a party to alert the district court "to an issue at a time when corrective action can be taken." *Top of Iowa Co-op. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000). Immediately prior to trial, the defendant objected to the court's exclusion of Des Moines property owners from the jury panel. This objection was sufficient to alert the court to the error that the defendant now raises on appeal at a time when the court could have corrected its prior ruling. Certainly it would have been helpful to the trial court had the City provided that court with the same legal authorities in support of its position that it has brought to the attention of this court on appeal. Error preservation does not turn, however, on the thoroughness of counsel's research and briefing so long as the nature of the error has been timely brought to the attention of the district court.

C. *Merits.* Having determined that error was preserved, we now consider whether the trial court erred in excusing all Des Moines property owners from the jury panel. We conclude it did.

Prior to 1984, this court had routinely held that "when an action in tort is brought against a municipality ... [the] plaintiff may ... effectively challenge any members of the jury panel who are taxpayers in the defendant municipality." *Beyer v. City of Dubuque*, 258 Iowa 476, 486, 139 N.W.2d 428, 435 (1966); *accord Lang v. City of Des Moines*, 294 N.W.2d 557, 564 (Iowa 1980) (declining "to retreat from past approval of the exclusion of property taxpayers from juries deciding civil actions in which their cities are named defendants"); *Alber v. City of Dubuque*, 251 Iowa 354, 363, 101 N.W.2d 185, 190 (1960) ("Throughout the history of the state it has been customary that where a claim for damages is made against a city, property owners in the city are disqualified as jurors."). But in 1984 the Iowa legislature enacted Iowa Code section 624.11A, which reads:

When selecting a jury in a trial in which a municipality is a defendant, a

juror challenge based on the potential juror's status as a taxpayer of that municipality *shall not be allowed unless* a real, substantial, and immediate interest is shown which would unfairly prejudice the plaintiff.

Iowa Code § 624.11A (emphasis added).

The plaintiff argues this provision merely codified the longstanding body of Iowa case law that allowed a challenge to a juror based upon taxpayer status. He claims he made the required showing of a "real, substantial, and immediate interest ... which would unfairly prejudice the plaintiff" due to the severe nature of his injury—the loss of his eye. Summy contends that because a significant verdict was likely and because such a verdict would result in substantially higher taxes, all Des Moines property owners would have a personal interest adverse to the plaintiff. The City responds that the point of the statute was to require a demonstration of bias on the part of each juror sought to be excluded. We agree. The legislature, rather than codifying existing case law, rejected that law by clearly stating that such challenges were *not* permitted, *unless* certain requirements were met.

In this case, the court failed to follow section 624.11A because it did not require the plaintiff to show a real, substantial, and immediate interest of the rejected jurors,[2] but rather excused all city property owners from the trial jury based simply on their status as taxpayers. This error in applying section 624.11A was an abuse of discretion. *See Graber v. City of Ankeny,* 616 N.W.2d 633, 638 (Iowa 2000) ("An abuse of discretion occurs when 'the court exercise[s][its] discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." (Citation omitted.)). We now turn to the question of prejudice.[3]

**D.** *Prejudice.* Prejudice from the erroneous exclusion of a juror will not be presumed. *See Alber,* 251 Iowa at 363, 101 N.W.2d at 190 (refusing to reverse based on trial court's disqualification of property owners from jury based, in part, on objecting party's failure to show prejudice); *cf. State v. Hartsfield,* 681 N.W.2d 626, 633 (Iowa 2004) ("Instructional error is not reversible error unless there is prejudice."); *Bauer v. Cole,* 467 N.W.2d 221, 225 (Iowa 1991) (stating erroneous evidentiary ruling "is not reversible error in the absence of prejudice"). Rather, a party claiming prejudice must establish that the resulting jury was not impartial and competent.[4] *See Johnson v. City of Waterloo,* 140 Iowa 670, 672, 119 N.W. 70, 71 (1909); *accord* 47 Am.Jur.2d *Jury* § 185, at 868–69 (1995). As this court explained in *Johnson,*

> The defendant had no right to a trial before any particular juror or jury. All it could insist upon was a competent and impartial jury, and, as the record does not affirmatively show that it exhausted

---

2. The record does not show how the court's ruling was implemented. Consequently, we do not know that the ruling actually caused *any* juror to be rejected.

3. Having concluded the trial court abused its discretion in excusing property owners from the trial jury, we need not consider the other grounds upon which the City challenged the court's action.

4. Because the error in this case occurred *after* the drawing and returning of the jury, as we decided in addressing the plaintiff's error-preservation argument, cases that hold no prejudice need be shown when the court inappropriately exercises its supervisory authority over the jury process are inapposite.

the peremptory challenges to which it was entitled, the jurors before whom the cause was tried are presumed to have been acceptable to it. The erroneous overruling of a challenge for cause may result in the retention of an objectionable juror. But this will, rarely, if ever, happen because of the rejection of a competent juror .... In states, where, as in this, the right to trial before any particular juror or jury is denied, the ruling by which a juror is excused without good cause is not reviewable on appeal, unless it also is made to appear from the record that this has resulted in the trial of issues before a partial or incompetent jury. The theory of these decisions is that, though a qualified juror be excused, another equally competent and fair minded will be selected in his stead, and, if a competent and impartial jury is finally secured before whom the cause is tried, neither party is in a situation to complain.

140 Iowa at 671–72, 119 N.W. at 71 (citations omitted). This court concluded in *Johnson* that the trial court's erroneous exclusion of resident taxpayers from the jury panel did not result in prejudice because there was no showing the resulting jury was not impartial. *Id.*

The same result is warranted here. The City has not demonstrated, nor even claimed, that the trial court's error forced the City to leave an objectionable juror on the jury. In the absence of such a showing, we cannot find prejudice. Therefore, the trial court's exclusion of Des Moines property owners from the jury, while an abuse of discretion, did not result in reversible error.

### III. *Jury Instructions on Liability Theory.*

■ The defendant objected to the court's instruction based on section 344 of the Restatement (Second) of Torts, concerning liability for a failure to prevent harm caused by a third party. The City contended the jury should have been instructed on the premises liability theory contained in the Iowa State Bar Association's Civil Jury Instructions Nos. 900.1 and 900.5, which are based on Restatement (Second) of Torts sections 343 and 343A. These latter Restatement provisions address liability for harm caused by conditions on the land. The City's argument is essentially that the plaintiff pled and sought to prove a section 343 or section 343A case because he and his experts criticized the condition of the golf course, yet the court instructed under a theory the defendant had failed to protect the plaintiff from the wrongful conduct of a third party.

■ We review a claim that the court gave an instruction that was not supported by the evidence for correction of errors of law. *See State v. Piper*, 663 N.W.2d 894, 914 (Iowa 2003). We review the related claim that the trial court should have given the defendant's requested instructions for an abuse of discretion. *See Anderson v. State*, 692 N.W.2d 360, 363 (Iowa 2005). "Under Iowa law, a court is required to give a requested instruction when it states a correct rule of law *having application to the facts of the case* and when the concept is not otherwise embodied in other instructions." *Herbst v. State*, 616 N.W.2d 582, 585 (Iowa 2000) (emphasis added).

For the reasons that follow, we think the court correctly instructed the jury on the duty set forth in section 344. As we also explain, sections 343 and 343A have no application to the facts of this case, so the court did not abuse its discretion in refusing to instruct on those theories.

Section 344 of the Restatement provides:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm *caused by the accidental, negligent, or intentionally harmful acts of third persons* or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344 (emphasis added). In contrast, section 343 concerns the liability of a possessor of land "for physical harm *caused to his invitees by a condition on the land*" if the possessor

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (emphasis added). Section 343A sets forth specific rules governing "physical harm caused to [invitees] by any activity or condition on the land whose danger is known or obvious to them." Restatement (Second) of Torts § 343A. As the wording of these provisions indicates, section 344 generally applies to injuries caused by third parties, whereas section 343 governs injuries caused by a condition on the land, and section 343A governs injuries caused by an activity or condition on the land. *See Young v. Gregg,* 480 N.W.2d 75, 78–79 (Iowa 1992) (distinguishing Restatement

premises liability theories based on direct cause of injury); *see also Morgan v. Perlowski,* 508 N.W.2d 724, 727 (Iowa 1993) (refusing to apply principles governing liability of possessor of land for harm caused by conditions or activities on the land in case involving landowner's failure to protect guest from harm by another guest).

A review of the record shows the gist of the plaintiff's claim against the defendant was that the City, as owner and operator of the golf course, had a duty to its business invitee, Summy, to exercise reasonable care to protect Summy from physical harm caused by other golfers. The plaintiff introduced evidence that the defendant failed to exercise reasonable care because there were several ways in which golfers could have been protected from other golfers' errant shots by making changes in the golf course in the area of the first and eighteenth fairways. The plaintiff never claimed that he was injured by a condition on the land, only that the condition of the land was such that it did not protect against injuries caused by third parties.

We think this evidence supports the instruction given by the court since the cause of the plaintiff's injury was the conduct of a third person, against which the plaintiff claimed the defendant could have protected him. The fact that some of the protective steps that could have been taken by the City involved changes to the condition of the premises did not make this a section 343 or section 343A case. All three Restatement provisions address the liability of the possessor of land, so it is not surprising that the conduct of the defendant with respect to its management and care of the premises would be relevant to each of these theories. We conclude, therefore, that the trial court did not err in submitting this case on the theory set forth in section 344, and likewise did not

abuse its discretion in refusing to instruct under sections 343 and 343A.

## IV. *Sole Proximate Cause.*

The defendant asserts the trial court abused its discretion (1) in refusing to allow the City to inform the jury in its opening statement that Thomas was the sole proximate cause of the plaintiff's injury, and (2) in refusing to give an instruction on sole proximate cause. We think the trial court correctly concluded that this concept was not applicable in this case.

■ "Sole proximate cause means the *only* proximate cause." *Johnson v. Interstate Power Co.*, 481 N.W.2d 310, 323 (Iowa 1992). It "rests on the notion that some third party or other *independent* event was the sole cause of the plaintiff's injuries." *Baker v. City of Ottumwa*, 560 N.W.2d 578, 583 (Iowa 1997) (emphasis added); *accord Sponsler v. Clarke Elec. Coop., Inc.*, 329 N.W.2d 663, 665 (Iowa 1983) (stating sole proximate cause "introduces an issue of a third party's conduct or a separate event into the case"); *Seide v. State*, 875 A.2d 1259, 1270 (R.I.2005) (" 'Intervening cause exists when an *independent and unforeseeable* intervening or secondary act of negligence occurs, after the alleged tortfeasor's negligence, and that secondary act becomes the sole proximate cause of the plaintiff's injuries.' " (Emphasis added and citation omitted.)). In this sense, it is used as an alternative

label for superseding cause.[5] *See State v. Marti*, 290 N.W.2d 570, 585 (Iowa 1980) (stating a finding that an act is an intervening, superseding cause is, in effect, a finding that the act was the sole proximate cause); *see also* Restatement (Third) of Torts: Liability for Physical Harm § 34 cmt. *f* (Proposed Final Draft No. 1 2005) (noting "[t]he most common usage of sole proximate cause is as an alternative to superseding cause"). Under the circumstances of this case, the alleged sole proximate cause—Thomas's negligent act[6]—is also an intervening cause because it is an event that occurred after the defendant's negligence to actively produce the harm to the plaintiff. *See Estate of Long ex rel. Smith v. Broadlawns Med. Ctr.*, 656 N.W.2d 71, 84 (Iowa 2002); *see also Weyerhaeuser Co. v. Thermogas Co.*, 620 N.W.2d 819, 830 (Iowa 2000) (" ' "Intervening" is used in a time sense; it refers to later events.' " (Citation omitted.)).

Whether this intervening cause could be a superseding or sole proximate cause of Summy's injuries is answered by the following principle of law from the Restatement (Second) of Torts:

> If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor

---

**5.** The City expends considerable effort in its brief detailing the evidence of Thomas's negligence, concluding this evidence supports a sole-proximate-cause instruction. But proof that a third party's negligence was *a* proximate cause of the plaintiff's injury does not warrant submitting the defense of sole proximate cause. There must be evidence from which it may be concluded that the third party's negligence was a superseding cause of the harm so as to make it the *sole* proximate cause of the harm.

**6.** There apparently was little dispute in this case that Thomas was negligent. Even though section 344 encompasses "physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons," *see* Restatement (Second) of Torts § 344, the court's instruction stated the owner or operator of a golf course had "the obligation to exercise reasonable care to prevent injuries caused by the *negligence* of third persons." (Emphasis added.)

from being liable for harm caused thereby.

Restatement (Second) of Torts § 449; *see also Weyerhaeuser Co.,* 620 N.W.2d at 830 (holding foreseeable intervening force is within scope of defendant's negligence and will not relieve defendant of liability); *Rieger v. Jacque,* 584 N.W.2d 247, 251–52 (Iowa 1998) (same). Under this rule, the concept of sole proximate cause is incompatible with a theory of liability based on Restatement (Second) of Torts section 344 when the third party who inflicted the harm is alleged to be the sole proximate cause of the plaintiff's injury. That is because section 344 liability is based on the defendant's failure to protect the plaintiff from the harm caused by the third party, whether the third party was negligent or not. A comment to the Restatement explains:

> The happening of the very event the likelihood of which makes the actor's conduct negligent and so subjects the actor to liability cannot relieve him from liability. The duty to refrain from the act committed or to do the act omitted is imposed to protect the other from this very danger. To deny recovery because the other's exposure to the very risk from which it was the purpose of the duty to protect him resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity.

Restatement (Second) of Torts § 449 cmt. *b.* A section 344 case falls squarely within the rule stated in section 449, as that rule is explained in this comment.

■ Turning then to the present case, we note that Thomas's negligence is one of the hazards against which the City had a duty to use reasonable care to protect the plaintiff. Therefore, Thomas's act does not prevent the City from being liable for the resulting harm. *See* Restatement

(Second) of Torts § 449 & cmt. *b.* Accordingly, Thomas's intervening act cannot, as a matter of law, be the sole proximate cause of the plaintiff's injury. *See Estate of Long,* 656 N.W.2d at 85 (affirming trial court's refusal to instruct on sole proximate cause in case submitted under Restatement (Second) of Torts section 323 (liability based on failure to render service necessary for the protection of another) because the intervening force fell " 'squarely within the scope of the original risk' " (citation omitted)); *see also Ontario Sewing Mach. Co. v. Smith,* 275 Ga. 683, 572 S.E.2d 533, 536 (2002) ("[F]or an intervening act of a third party to become the sole proximate cause of a plaintiff's injuries, the intervening act must not have been 'foreseeable by defendant....' "); *Contois v. Town of West Warwick,* 865 A.2d 1019, 1027 (R.I.2004) (same).

For this reason, the trial court did not abuse its discretion by refusing to instruct the jury on the defendant's sole-proximate-cause defense. *See Herbst,* 616 N.W.2d at 585 (stating court must give requested instruction only "when it states a correct rule of law *having application to the facts of the case* " (emphasis added)). Likewise, the court did not abuse its discretion in prohibiting the City from stating in its opening statement that Thomas's negligence was the sole cause of the plaintiff's injuries. *See State v. Miller,* 359 N.W.2d 508, 510 (Iowa Ct.App.1984) (stating scope and extent of opening statement rests within discretion of trial court).

## V. *Directed Verdict.*

■ The City requested a directed verdict on several grounds, two of which it asserts on appeal were sufficient to warrant a verdict in its favor as a matter of law. We review a trial court's ruling on a motion for directed verdict for the correction of errors of law. *Bellville v. Farm*

*Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005).

A. *Immunity.* The defendant moved for a directed verdict on the basis it was immune pursuant to Iowa Code section 670.4(10), which provides for the immunity of a municipality on any claim

> based upon an act or omission of an officer or employee of the municipality, whether by issuance of permit, inspection, investigation, or otherwise, and whether the statute, ordinance, or regulation is valid, if the damage was caused by a third party, event, or property not under the supervision or control of the municipality, unless the act or omission of the officer or employee constitutes actual malice or a criminal offense.

Iowa Code § 670.4(10). On the day in question, Thomas was playing on a pass issued to his employer. The City argues the pass is akin to a license or permit and thus within the contemplation of section 670.4(10). Because Thomas was not under the supervision or control of the defendant, the City reasons it is immune under subsection (10) from a claim for damages caused by Thomas.

This court has previously interpreted section 670.4(10) to grant immunity only when the claim against the municipality is based on the issuance of a permit, an inspection, an investigation, or similar municipal action. *Messerschmidt v. City of Sioux City*, 654 N.W.2d 879, 884 (Iowa 2002). Even if we accept the City's argument that its action in issuing a golfing pass to Thomas's employer is similar to the issuance of a permit, we do not think the plaintiff's claim against the City was based on this action by the defendant. The plaintiff's claim does not rest on any negligence by the City in letting Thomas play golf on city property that day. The plaintiff's claim is premised on the City's failure to protect the plaintiff from the foreseeable hazard of an errant golf shot. This claimed negligence by the City is not remotely similar to the municipal actions encompassed in section 670.4(10). Consequently, the immunity granted in that section does not apply, and the trial court correctly refused to grant a directed verdict on the basis of statutory immunity.

B. *Duty.* The defendant also based its motion for directed verdict on the assertion it had no duty to Summy to protect him from the ordinary risks inherent in the game of golf. While section 344 does not make the owner or operator of a golf course an insurer of players' safety, it does require that the possessor of land exercise reasonable care to protect players from certain risks under specified circumstances. As we have previously discussed, Summy's lawsuit was based on the City's failure to take the ordinary precautions a reasonable golf course owner or operator would take. This claim falls within the duty of possessors of land recognized in section 344.

The City also relies on the public duty doctrine: if the government owes a duty to the general public, it has no liability to any one individual when it fails to perform this public duty. *See Kolbe v. State*, 625 N.W.2d 721, 729 (Iowa 2001). This doctrine is inapplicable here because the City's duty was one owed to invitees on the golf course, not to the public at large. *See id.* (stating doctrine does not apply if there is a particular relationship between the governmental entity and the injured plaintiff that gives rise to a special duty). We conclude, therefore, that the trial court did not err in refusing to direct a verdict in favor of the City.

VI. *Summary and Disposition.*

The district court abused its discretion in excluding property owners in the City of

Des Moines from the trial jury without requiring an individualized showing of bias. The defendant did not demonstrate, however, that this error resulted in prejudice. The trial court properly submitted this case to the jury on the basis of the City's failure to exercise reasonable care to protect invitees from the harmful acts of third parties, as set forth in section 344 of the Restatement (Second) of Torts. In addition, the court correctly determined that the doctrine of sole proximate cause was not applicable. Finally, the trial court did not err in denying the City's motion for a directed verdict because, contrary to the City's arguments, the City owed a duty to the plaintiff under section 344, this duty did not fall within the public-duty doctrine, and the City was not immune under section 670.4(10). Finding no reversible error, we affirm.

**AFFIRMED.**

All justices concur except CADY, J., who dissents, and WIGGINS, J., who takes no part.

CADY, J. (dissenting).

I respectfully dissent from the conclusion by the majority that the district court's systematic exclusion of property owners from the jury panel did not constitute reversible error. The majority reached this conclusion by applying the incorrect standard, requiring a showing of prejudice, resulting in a decision that seriously undermines the basic democratic ideals responsible for the strength of, and confidence in, our American jury system.

I acknowledge that courts normally apply the prejudice standard to decide if defects and errors in the jury-selection process will support a reversal of the judgment. This standard, applied by the majority in this case, requires that error in the selection of the jury must be accompanied by a showing of prejudice to the challenging litigant in order to justify a reversal of the judgment. It recognizes the right of each litigant to a fair and impartial jury, and, based upon this right, properly requires a showing that the litigant was deprived of a fair and impartial jury due to the error. In other words, if the jury members ultimately selected were fair and impartial despite the error, then the error in selecting the jury was harmless.

While the landscape of the law is dominated by the primary colors of general principles, subtle shades of exceptions must be observed to fully depict the overall brilliance of the composite of justice. In this case, this essential shading is found in one of the fundamental hues of our American jury system—an impartial jury from a cross-section of the community. *See Ballard v. United States*, 329 U.S. 187, 195, 67 S.Ct. 261, 265, 91 L.Ed. 181, 186–87 (1946). When this pillar is systematically removed by those charged with the responsibility to oversee the jury-selection process, the injury and prejudice to an individual litigant is replaced by a greater injury not only to the jury system itself, but "to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts." *Id.* at 195, 67 S.Ct. at 265, 91 L.Ed. at 187. "The evil lies in the admitted exclusion of an eligible class or group in the community in disregard of the prescribed standards of jury selection." *Id.*

Such action by the court " 'destroy[s] the basic democracy and classlessness of jury personnel,' " fails to give a litigant " 'the type of jury to which the law entitles him,' " and deprives litigants " 'a right which the lawmakers have not seen fit to withhold.' " *Id.* (quoting *United States v. Roemig*, 52 F.Supp. 857, 862 (N.D.Iowa 1943)). The gist of the problem was suc-

cinctly stated by the United States Supreme Court in *Thiel v. Southern Pacific Co.,* 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946):

> The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups. Recognition must be given to the fact that those eligible for jury service are to be found in every stratum of society. Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury

*Thiel,* 328 U.S. at 220, 66 S.Ct. at 985–86, 90 L.Ed. at 1184–85 (citations omitted).

Our legislature has established those groups of individuals who are eligible for jury service, and it has even specifically provided that any challenge to a potential juror's status as a taxpayer must be made during voir dire based upon a specific finding of unfair prejudice. Iowa Code § 624.11A. It is not the role of courts to depart from this legislative standard and systematically remove groups from the community that our legislature has seen fit to include. That is a clear abuse of judicial authority, inflicted on a critical component of our system of justice, and it requires that we look beyond the general rule to draw out an exception that "reversible error does not depend on a showing of prejudice in an individual case." *Ballard,* 329 U.S. at 195, 67 S.Ct. at 265, 91 L.Ed. at 186 (footnote omitted).

The rule that should be applied in Iowa to claims of error in the selection of a jury is that such error will not result in a reversal of the judgment unless either individual prejudice is shown or there has been intentional and systematic exclusion of a group of jurors. This is the rule followed by the United States Supreme Court, as well as many state courts. *See id.; see, e.g., Alvarado v. State,* 486 P.2d 891, 899 n. 20 (Alaska 1971) (no showing of individual prejudice required); *People v. Bell,* 49 Cal.3d 502, 262 Cal.Rptr. 1, 778 P.2d 129, 137 n. 4 (1989) ("A criminal defendant who asserts a systematic exclusion of a cognizable class of prospective jurors in a pretrial challenge to the jury venire or panel need not show that his trial jury was underrepresentative."); *Wilkins v. State,* 96 Nev. 367, 609 P.2d 309, 311 (1980) ("[A]bsent *either* a showing of systematic, class-based exclusion of prospective jurors *or* a showing of prejudice, an irregularity in the selection of jurors, without more, must be deemed harmless error." (Emphasis added.)); *State v. Strodes,* 48 Ohio St.2d 113, 357 N.E.2d 375, 377–78 (1976) ("Unless prejudice to the defendant *or* the systematic and intentional exclusion of a group is shown, we will not reverse a judgment because of minor and technical defects in jury-selection procedures." (Emphasis added.)), *vacated on other grounds,* 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978).

The majority rejects this approach essentially on two grounds. First, it finds the no-prejudice rule inapposite to this case because the error here occurred after the jury panel was returned. This, of course, is a distinction without a differ-

ence. When a judge acts to remove a class of jurors from the jury panel, what possible difference would it make to the ideals we are trying to observe if the illegal action was done before, during, or after the drawing and returning of the jury? In each instance, the evil inflicted is the same, and it is equally abhorrent to our democratic ideals of a jury trial. In each instance, the prejudice is the same. In each instance, prejudice is inherent in the illegal act of preventing a party from selecting a jury from a panel composed of a representative class of people.

Second, the majority relies on two of our prior cases in which we previously indicated that prejudice will not be presumed. *See Alber v. City of Dubuque*, 251 Iowa 354, 363, 101 N.W.2d 185, 191 (1960); *Johnson v. City of Waterloo*, 140 Iowa 670, 671, 119 N.W. 70, 71 (1909). Yet, these cases only express a general rule, and there is no indication we have ever considered the question from the perspective expressed in *Ballard* and *Thiel*. Additionally, the court in *Alber* applied the prejudice standard only after finding that it was a custom in this State to exclude taxpayers in tort cases against a city; it was in the best interest of the taxpayer jurors to exclude them; and the decision to exclude jurors was within the discretion of the trial court. *See Alber*, 251 Iowa at 363, 101 N.W.2d at 190. Thus, these cases have no significance today because there is now a statute governing the matter, and the discussion of prejudice was not subject to the scrutiny of the institutional injury.

If we truly embrace our jury system in this State, we should be willing, indeed quick, to implement rules to protect and preserve those fundamental concepts responsible for its historical success. Instead, the prejudice standard adopted in this case literally means *no* litigant could get relief from the illegal acts of a judge who systematically excludes a class of people from the jury as long as the jurors ultimately selected to serve on the jury were found to be fair and impartial. Yet, our rules must not just strive to achieve fairness and impartiality in the individual jurors selected. Under the majority's rule, a judge could systematically exclude all women from the jury as long as the men selected would be fair and impartial. This is a barbaric concept, which the prejudice standard was never intended to sanction. A litigant is entitled to a fair and impartial jury selected from a representative class as determined by our legislature, and the loss of this fundamental principle through the improper actions of a trial judge and the implementation of an overly strict appellate standard can only lead to the erosion of the jury system.

I would hold that the trial court error in this case requires a new trial without any showing of prejudice to the City.