# IN THE COURT OF APPEALS OF IOWA

No. 24-0338
Filed July 23, 2025

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**SURFUN JULISE BOENS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Paul D. Scott (trial and sentencing), Judge.

A defendant appeals his conviction for first-degree murder. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Josh Irwin (argued), Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven (argued), Assistant Attorney General, for appellee.

Heard at oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**TABOR, Chief Judge.**

A jury convicted Surfun Boens of first-degree murder for killing his roommate, Russell McKeehan Jr. Boens appeals, contending that the court abused its discretion in granting the State's motion to strike a prospective juror for cause. And Boens urges that the undeserved strike prejudiced him because the State gained disproportionate power to shape the jury's composition—effectively exercising an extra peremptory challenge. He asks that we reverse his conviction and remand for a new trial. But on this record, Boens has not established reversible error. So, we affirm.

## I.     Facts and Prior Proceedings

Boens and McKeehan lived together in room 226 of a Des Moines motel. In the early morning hours of January 13, 2023, Boens called 911 to report that he found McKeehan in the bathroom when he came home and McKeehan didn't "look very well." When first responders arrived at room 226, they discovered McKeehan dead in "a large puddle of blood" on the bathroom floor. He had been shot twice in the head.

Motel surveillance video showed McKeehan entering room 226 for the last time shortly after 11:00 p.m. on January 12. The video also showed Boens briefly leaving then returning to the room shortly before midnight. Around midnight, neighbors in adjacent rooms heard "two loud bangs," followed by "somebody saying 'Fuck' repeatedly." The surveillance video showed Boens leaving room 226 again a few minutes after midnight and returning about thirty minutes later. In that interval, Boens made a flurry of phone calls to friends and family. He also took a photo with his cell phone that appeared to show McKeehan's body in the bathroom.

Shortly after 1:00 a.m., Boens called a friend and "said he had done something really bad." About an hour later, he called 911 but hung up before the call connected to an operator. Then around 3:00 a.m., Boens left the motel with his brother in his brother's car. The surveillance video showed the car returning to the motel and Boens entering room 226 alone around 4:00 a.m. Boens called 911 again a few minutes later, requesting an ambulance for McKeehan. Boens was in the room when first responders arrived. He said he had been drinking and smoking marijuana that night and didn't know what happened to McKeehan.

Crime scene investigators found "some live rounds and some firearm casings and what [they] believed to be one suspect bullet hole inside the room."[1] They also found "a cell phone that had been taken apart and was on the floor." Additionally, investigators noticed "staining" on Boens's shoes, which DNA testing later matched to McKeehan's blood. And they discovered "a copper projectile" in Boens's coat pocket.

The State charged Boens with first-degree murder, a class "A" felony, in violation of Iowa Code sections 707.1 and 707.2 (2023). He pleaded not guilty. The case went to jury trial in November 2023.

During voir dire, a prospective juror disclosed that his uncle was convicted of murder in Polk County in 2001. This exchange followed:

> PROSECUTOR: Do you believe your uncle was treated unfairly by the court system?
> JUROR: Yeah. Yeah.
> PROSECUTOR: Because of that, would you have a hard time sitting on a jury for a murder case today?
> JUROR: I would try to keep an open mind, but I guess that's— my uncle is in the back of my mind as well.

---

[1] Investigators never found the gun used to kill McKeehan.

PROSECUTOR: That's why we have to ask the questions. It's not your fault, obviously, what happened to your uncle. But if you can't be fair and impartial, it's not fair to the other side of the case. Based on that, do you think you could be fair and impartial in this case?
JUROR: I guess I could try to keep an open mind.

The same prospective juror also disclosed that his brother and brother-in-law were more recently convicted of sex offenses and theft in Polk County. The State's questioning continued:

PROSECUTOR: Same kind of question as to your uncle. Because of what happened to your brothers, do you have any negative opinions of the court system or the Des Moines [Police Department (PD)] or West Des Moines PD?
JUROR: Not with those situations, no.
PROSECUTOR: You don't feel they were treated unfairly?
JUROR: No.
. . . .
PROSECUTOR: The same line we've been discussing. Do you think you could be fair and impartial based on those if seated on this jury?
JUROR: I believe so.

Additionally, that prospective juror informed the parties he was a victim of "several crimes" when he "was a kid."[2] This exchange with the prosecutor then ensued:

PROSECUTOR: Do you feel the police department investigated those crimes properly?
JUROR: No.
PROSECUTOR: Which police department were you with?
JUROR: Des Moines.
PROSECUTOR: And you're going to hear from Des Moines PD officers in the course of this case. Do you think you could be open-minded to their testimony, fairly so or unfairly so, potentially unbiased towards them because of what happened in your own situations? . . .
JUROR: I can't say I can. Just—just with the situations, the way they went and such, I have my doubts, I guess.

---

[2] The prospective juror was born in 1978.

PROSECUTOR: You don't feel like you could trust their testimony?

JUROR: I know every situation is different, but knowing how the situations in the past were treated. Like I said, I would definitely keep an open mind, but I can't say that I wouldn't, you know, recall those other incidents in my past.

After that last response, the prosecutor moved to "strike this [juror] because of his opinions of police." Defense counsel then asked the juror, "If you were listening to the testimony of police officers you don't know that were not involved in your case, do you think you can evaluate that with an open mind?" The juror answered, "I could with an open mind, yeah."

The prosecutor moved again to strike the juror for cause, explaining:

Your Honor, I do believe that the [juror] has indicated he cannot be fair and impartial given all the circumstances he spoke to. I know he wavered in his determination of the officer's statements when asked by defense counsel, but therein lies the problem. If someone can't say they can be fair and impartial and determinate, we have to be cautious.

Defense counsel objected:

. . . I don't believe the State established any of the grounds under Rule 2.18 that would constitute the grounds for a strike for cause. I don't believe [the juror] has told us he has formed or expressed an opinion about the innocence of the defendant that would prevent him from rendering a true verdict. I don't believe his statements indicate that he would have an actual bias for or against a party, as Subsection O sets out, so I would resist the challenge for cause.

The court granted the State's motion and excused the prospective juror without explanation.

The jury found Boens guilty as charged. The district court sentenced him to life in prison without the possibility of parole. Boens appeals.

## II.     Scope and Standard of Review

"We review the district court's rulings on challenges to potential jurors for cause for abuse of discretion." *State v. Jonas*, 904 N.W.2d 566, 571 (Iowa 2017). "The district court is vested with broad discretion in such rulings." *Id.* The court abuses its discretion if it "exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *State v. Tipton*, 897 N.W.2d 653, 690 (Iowa 2017) (citation omitted). "If we find an abuse of discretion, we will only reverse if prejudice is shown." *Id.*

## III.    Analysis

Boens argues that the district court abused its discretion in striking the potential juror for cause because the State did not establish a valid basis for dismissal under Iowa Rule of Criminal Procedure 2.18(5).[3] As for prejudice, he reasons that granting the State's strike for cause freed the prosecutor to exercise a peremptory challenge on another prospective juror. That luxury, in Boens's view, gave the State greater influence over the jury's makeup.

But Boens does not claim that the court's error forced him to "waste" a peremptory strike to remove an objectionable juror. *See State v. Neuendorf*, 509 N.W.2d 743, 747 (Iowa 1993). Nor does he allege that the court wrongly denied one of his peremptory strikes. *See State v. Mootz*, 808 N.W.2d 207, 225 (Iowa 2012) (presuming prejudice when court erroneously refuses to allow defense to exercise peremptory challenge). And he does not try to show that the court's error resulted in a biased or incompetent juror being seated.

---

[3] At trial, neither the prosecutor nor the court identified which of the rule's specific causes for dismissal applied. *See* Iowa R. Crim. P. 2.18(5)(a)–(o).

Under long-standing precedent, we do not presume prejudice when a juror is improperly excluded. *Summy v. City of Des Moines*, 708 N.W.2d 333, 339 (Iowa 2006), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016). Instead, "a party claiming prejudice must establish that the resulting jury was not impartial and competent." *Id.* Our supreme court recently reaffirmed that standard and rejected the prejudice argument Boens now raises. *See State v. Booker*, 989 N.W.2d 621, 633 (Iowa 2023) ("Booker does not attempt to show that his petit jury was partial or incompetent. Rather, his prejudice argument maintains that if the court erred in allowing the strike, then it effectively granted the prosecutor an additional peremptory strike by sparing him from using one to remove Juror 24.").

In *Booker*, the court explained:

> Although we have recently eased the burden on a party seeking to establish prejudice from an erroneous *denial* of a for-cause challenge, it has been long-settled in Iowa (and across the country generally) that in order to establish prejudice from the erroneous *grant* of a for-cause challenge a party must show that "the resulting jury was not impartial and competent."

*Id.* (citations omitted). Thus, the court rejected the defendant's claim "that it was enough to show he was prejudiced because the State effectively received an extra strike." *Id.* And it found no reversible error because "the district court's decision to excuse Juror 24 for cause did not prejudice Booker absent evidence that the seated petit jury was partial or incompetent." *Id.* at 634.

Boens criticizes the supreme court's reasoning in *Booker*, insisting that a "per se prejudice approach to situations where one party has more power to shape the jury than the other due to the district court's error is the only way to give teeth

to the rule limiting the number of strikes available to parties." But we cannot overturn supreme court precedent. *See State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990). Even if the district court abused its discretion in granting the State's challenge for cause, Boens has not established prejudice under *Booker*. *See* 989 N.W.2d at 633–34. So, we affirm.

**AFFIRMED.**