Nikki **HERBST**, Appellant,

v.

**STATE** of Iowa, Appellee.

No. 98–1985.

Supreme Court of Iowa.

Sept. 7, 2000.

Martin A. Diaz of Martin Diaz Law Firm, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Joanne Moeller, Assistant Attorney General, for appellee.

McGIVERIN, Chief Justice.

In this slip and fall case, the narrow question we must consider is whether the district court properly instructed the jury concerning the specifications of negligence as alleged by plaintiff in her action against defendant, the State of Iowa, for personal injuries she sustained while descending from the stage in a University of Iowa music rehearsal hall. After the jury returned a verdict in favor of defendant and the district court entered judgment thereon, plaintiff moved for a new trial, asserting the district court erred in refusing to instruct the jury concerning certain specifications of negligence. The district court overruled plaintiff's motion. Our court of appeals affirmed. We granted plaintiff's application for further review.

Upon our review, we conclude that the district court erred when it instructed the jury concerning the specifications of negligence alleged by plaintiff. We vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for a new trial.

## I. Background facts and proceedings.

After complying with the requirements of Iowa Code chapter 669 (1995) (filing claim with the State Appeal Board under Iowa Tort Claims Act), plaintiff Nikki Herbst filed a petition in district court against defendant, the State of Iowa. In her petition, Herbst alleged that she was injured on June 17, 1995 when she fell while descending from the stage in a music rehearsal hall on the campus of the University of Iowa and that the University's negligence in connection with access to the stage was the cause of her injuries.[1] The case was tried to a jury.

Evidence presented during trial showed that the stage in the rehearsal hall is approximately thirty inches high. As is common with most stages, there are no steps directly in front of the stage. There is a set of permanent stairs located in the upper left-hand corner as a person would look at the stage. To get to those permanent stairs, one would have to walk down a hallway along the left side of the stage.

Herbst testified that she went to the University of Iowa Opera Rehearsal Hall at approximately 9:45 a.m. on Saturday June 17 to attend a band rehearsal for the Iowa City community band. Herbst had never been to the opera rehearsal hall before this date. Herbst explained that upon entering the rehearsal hall, she saw a set of black wooden steps leading up to the left-hand side of the stage and what looked like a bench on the right-hand side of the stage. Herbst walked to the left side of the stage, looking for a set of steps, but she only saw large canvas backdrops stacked on wooden casters. Some people were getting on and off the stage by using the black wooden steps or the bench, while others used neither the steps nor the bench. Herbst walked up the black steps to reach her seat on the stage.

After an hour or so of rehearsal, the band took a break. Band members again used various means by which to leave the stage. Herbst decided to leave the stage to use the restroom. Herbst saw other people leaving the stage at the center

1. Although the State of Iowa is the properly named defendant, for convenience we will refer to the University of Iowa as defendant.

point of the stage, which was the most direct route to exit the stage. Instead of exiting the stage the same way she got up onto the stage, Herbst decided to exit the stage from its center point. As she walked to the front edge of the stage, Herbst looked down and saw what appeared to be two natural wood colored steps resting against the stage. Herbst believed the steps to be approximately seven inches high and approximately twenty-seven inches or one and a half to two feet wide. Other band members had used this means of exiting the stage without problems before Herbst attempted to do so. When Herbst stepped down onto the steps, however, the steps moved out from under her, and she fell to the concrete floor, striking her hip and arms. Herbst later learned that what she thought were steps were actually two wooden boxes that someone had stacked one on top of the other as a means of accessing/exiting the stage. After her fall, the boxes were moved away from the stage but remained in the area.

After her fall, Herbst returned to rehearsal. The next day, Sunday, Herbst played with the band in its Sunday performance. Later that day, Herbst returned to the opera rehearsal hall, but could not find the bench or the wooden boxes she had seen the previous day. On Monday, two days after her fall, Herbst went to her family doctor concerning her injuries from the fall. Herbst reported the incident to the University the following Tuesday.

Robert Brady, the band manager of the Iowa City community band, was in charge of making arrangements for concerts and setting up for concerts and rehearsals. The band is not affiliated with the University, but often practices in the music buildings at the University. On the day of Herbst's fall, the University did not assist the band with setting up equipment in the opera rehearsal hall and did not inspect the room or otherwise supervise the use of the room.

Brady testified that in the past the band had access to a set of portable stairs for accessing/exiting the stage in the opera rehearsal hall, but that those stairs were not present on the day of rehearsal and he could not find them. When Brady arrived on the morning of the rehearsal, he saw boxes, one larger than the other, already at the center portion of the stage. Brady also testified that he knew a permanent set of stairs existed, but did not know exactly where they were located. Brady did not see Herbst fall from the stage but heard a loud crash.

In her later investigation, Martha Huelsbeck, a University music school official, could not locate boxes in the stage area matching Herbst's description. Huelsbeck stated that props are stored in the hallway leading to the permanent stairs and that props were located in that area at the time of Herbst's fall. Herbst apparently did not see the hallway leading to the permanent steps because of the props stored in that area.

Dwight Sump, the technical coordinator for the production unit at the University of Iowa, testified that there is a set of portable steps in the opera rehearsal hall. Sump explained that the portable steps were on the rehearsal hall floor on Friday, the day before Herbst's fall. During the week following Herbst's fall, Sump went to the opera rehearsal hall and found the portable steps on the stage, one at each back corner, not down on the concrete floor where they normally would be. The steps appeared to be holding back the stage curtains, presumably to create additional space on the stage.

Sump also testified that the opera rehearsal room is used by various groups within the University's School of Music and by individuals outside the University. The doors to the opera rehearsal room are not locked and there are no rules concerning the use of equipment in the room, such as the portable steps, props, chairs and other items. Persons using the room may set up the room to suit their needs and

equipment is usually left wherever it was used; there are no rules requiring that equipment be returned to a certain place after use. The University does not charge a fee for use of the opera rehearsal hall.

After the jury returned a verdict finding the University was not at fault, the court entered judgment in favor of the University. Herbst then filed a motion for new trial, asserting that the district court erred in instructing the jury on the specifications of negligence concerning defendant, but the court overruled the motion.

Upon Herbst's appeal, we transferred the case to our court of appeals, which affirmed the district court's judgment. We granted Herbst's application for further review.

## II. Were the jury instructions proper?

### A. The issue and standard of review.

The narrow question we must consider is whether the district court adequately instructed the jury concerning the specifications of negligence as alleged by plaintiff Herbst in her action against the defendant University.

 Our standard of review concerning alleged error with respect to jury instructions is for correction of errors at law. Iowa R.App. P. 4; *Duncan v. City of Cedar Rapids*, 560 N.W.2d 320, 325 (Iowa 1997). Error in giving or refusing to give a particular instruction does not warrant reversal unless the error is prejudicial to the party. *Sonnek v. Warren*, 522 N.W.2d 45, 47 (Iowa 1994); *Coker v. Abell–Howe Co.*, 491 N.W.2d 143, 148 (Iowa 1992).

### B. Applicable law.

 The rules concerning instructions by the trial court to the jury are well established. Under Iowa law, a court is required to give a requested instruction when it states a correct rule of law having application to the facts of the case and when the concept is not otherwise embod-

ied in other instructions. *Gamerdinger v. Schaefer*, 603 N.W.2d 590, 595 (Iowa 1999). "Parties to lawsuits are entitled to have their legal theories submitted to a jury if they are supported by the pleadings and substantial evidence in the record." *Sonnek*, 522 N.W.2d at 47. "When weighing the sufficiency of the evidence to support a requested instruction, we view the evidence in a light most favorable to the party seeking the instruction." *Duncan*, 560 N.W.2d at 325; *Sonnek*, 522 N.W.2d at 47. Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion. *Coker*, 491 N.W.2d at 150. "Instructions must be considered as a whole, and if some part was given improperly, the error is cured if the other instructions properly advise the jury as to the legal principles involved." *Thavenet v. Davis*, 589 N.W.2d 233, 237 (Iowa 1999).

 With respect to a negligence claim not involving *res ipsa loquitur*, a plaintiff must identify the specific acts or omissions relied on to generate a jury issue. *Bigalk v. Bigalk*, 540 N.W.2d 247, 249 (Iowa 1995). "Jury instructions should be formulated so as to require the jury to focus on each specification of negligence that finds support in the evidence." *Id.* We explained in *Bigalk*

that the requirement for instructing on specific acts or omissions is at least partially designed to assure that the jury will give consideration to each of the alleged acts or omissions in determining the overall question of breach of duty.

*Id.* On this same point we have said:

The purpose of requiring the jury to consider factual specifications is to limit the determination of facts or questions arising in negligence claims to only those acts or omissions upon which the court has had an opportunity to make a preliminary determination of the sufficiency of the evidence to generate a jury question. Each specification should identify either a certain thing the allegedly negligent party did which that party should not have done, or a certain

thing that party omitted that should have been done, under the legal theory of negligence that is applicable.

*Coker,* 491 N.W.2d at 151 (citations omitted).

 The facts of the particular case, of course, determine whether a court's instructions concerning negligence sufficiently encompass all specifications of negligence alleged by a plaintiff. For example, in *Schuller v. Hy–Vee Food Stores, Inc.,* 328 N.W.2d 328 (Iowa 1982), plaintiff fell over a canister ashtray in the aisle of a grocery store. Plaintiff sought submission of four specifications of negligence against the defendant: (1) blocking an aisle by placement of the ashtray; (2) placing an ashtray in a concealed location; (3) failing to place the ashtray in a safe location; and (4) failing to warn of the ashtray's location. *Schuller,* 328 N.W.2d at 331–32. The court, however, submitted only the issue of whether defendant was negligent "in placing the ashtray stand in an aisle where customers were expected to walk." *Id.* at 332. On appeal, we concluded that plaintiff's first three specifications of negligence were all based on the concept of placement of the canister and that this concept was adequately incorporated in the single specification of negligence submitted to the jury. *Id.*

In *Bigalk,* plaintiff was injured when she fell into an unguarded stairwell. In her suit against the property owner, plaintiff alleged that defendant was negligent in (1) failing to warn of the danger, (2) providing inadequate illumination in the area of the stairwell, (3) not covering the open stairwell, and (4) not providing a railing around the stairwell. 540 N.W.2d at 248–49. The court, however, advised the jury that the defendant was negligent in failing to make the open stairway safe or in failing to warn the plaintiff of the open stairway and the risk involved. *Id.* at 249. Plaintiff objected to the court's instruction, arguing that it failed to advise the jury concerning the specific acts or omissions by defendant relating to failure to provide adequate illumination, failure to cover the opening, or failure to provide a railing. *Id.* On appeal, we reversed, concluding that the court's instruction failed to ensure that the jury would give consideration to each of the alleged acts or omissions in determining the overall question of whether defendant breached its duty owed to plaintiff. *Id.* We said that plaintiff was entitled to have the jury instructed concerning each alleged act or omission that found support in the evidence. *Id.* at 250.

## C. Application of law to facts.

On appeal, defendant does not dispute that it owed Herbst a duty of care in this premises liability case.

 As above stated, the main question here is whether the district court adequately instructed the jury concerning Herbst's requested specifications of negligence that were supported by the evidence.

Like the plaintiff in *Bigalk,* plaintiff Herbst challenges the manner in which the district court instructed the jury on her specific claims of negligence. Herbst's theory was that the University breached its duties owed to her in at least three ways, as presented in her requested jury instruction:

a) permitting makeshift stairs to be used for access onto the stage at the Opera Rehearsal Hall.

b) failing to provide a safe and secure set of stairs for access onto the stage at the Opera Rehearsal Hall.

c) failing to provide unimpeded access to the permanent stairs for access to the stage at the Opera Rehearsal Hall.

The district court, however, refused to instruct the jury as requested by Herbst. Over Herbst's timely objection, the court instructed the jury only on the following specification of negligence:

The defendant, on June 17, 1995, was negligent in failing to provide safe and

secure access onto the stage at the Opera Rehearsal Hall.

Herbst asserts that the court's instruction failed to adequately advise the jury concerning the potential ways in which defendant was negligent, i.e., permitting makeshift stairs to be used for access to the stage, failing to provide a safe and secure set of stairs for access onto the stage, and failing to provide unimpeded access to the permanent stairs. Herbst also contends that the court's instruction allowed the jury to incorrectly find that the University satisfied its duty owed to Herbst simply by making a permanent set of stairs available.

Upon our review, we generally agree with Herbst's contentions. First, the parties do not dispute the facts surrounding Herbst's fall. For instance, the record shows that although a set of portable steps was usually available for use in the opera rehearsal hall, those stairs could not be found on the day of Herbst's fall. As a result, people used various means to access the stage. Thus, substantial evidence of a negligent *act* exists in the record to submit Herbst's requested specification of negligence with respect to whether defendant permitted makeshift stairs to be used for access onto and off the stage. We believe it likewise follows that there was substantial evidence to support submission of Herbst's theory of a negligent *omission* in that the University was negligent in failing to provide safe and secure access onto and off the stage. Herbst's specification of negligence concerning unimpeded access to the permanent set of stairs would be encompassed in the above specifications.

The University argues that Herbst's theories of negligence were adequately incorporated in the court's general instruction regarding safe and secure access onto the stage. We conclude, however, that the court's instruction did not adequately ensure that the jury would give separate consideration to the alleged act or omission by the University as stated above.

Accordingly, we vacate the decision of the court of appeals and reverse the judgment of the district court.

### III. Disposition.

We conclude that the district court did not adequately instruct the jury concerning the specifications of negligence as presented in plaintiff's premises liability claim against defendant. We vacate the decision of the court of appeals and reverse the judgment of the district court, and remand for a new trial.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**

All justices concur except NEUMAN, J., who takes no part.