# IN THE COURT OF APPEALS OF IOWA

No. 13-0653
Filed April 30, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DARWIN LAQUELL GREEN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Webster County, Kurt L. Wilke, Judge.

Defendant appeals his conviction for robbery in the second degree. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Robert Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Martha E. Trout, Assistant Attorney General, and Ricki Osborn, County Attorney, for appellee.

Considered by Danilson, C.J., Vaitheswaran, J., and Huitink, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**DANILSON, C.J.**

Darwin Green appeals his conviction for robbery in the second degree, in violation of Iowa Code sections 711.1 and 711.2 (2011). Green contends the district court abused its discretion in denying his motion for new trial because the jury verdict was contrary to the weight of the evidence. He also contends the district court erred in failing to give the jury the instructions regarding inconsistent statements. We find the district court's denial of Green's motion for a new trial was not an abuse of discretion. Green also failed to establish a material variance of a specific witness's testimony that warranted the requested instructions, but nonetheless, he was afforded the opportunity to argue any inconsistencies in his closing argument. We affirm.

**I. Background Facts and Proceedings.**

On August 25, 2012, Ali Ghanim and his wife stopped at a Fort Dodge convenience store to buy a soda. Ghanim went into the store while his wife waited in the car. While inside, Ghanim began talking to Green about his hair braiding. Ghanim testified Green told him the lady who did the braiding lived around the corner and that Green would take him there. Green then gave Ghanim his phone number.

Ghanim left the store and took his wife the soda. While his wife remained in the car, Ghanim continued talking with Green, who was wearing an orange shirt, and three other men who were with them. Ghanim testified one of the men wore a black hoodie and had "twisted" hair. Another of the men had something white wrapped around his hand. Ghanim was unable to describe the third male.

Ghanim testified the four males then began leading him to the home of the lady who did the hair braiding.

According to Ghanim's testimony, the four men turned down an alley and he followed.  Green then took a gun out of his waistband and told Ghanim he was being robbed.  The man wearing the black hoodie ordered Ghanim to empty his pockets while the man with the white wrapping on his hand acted as a lookout.  Ghanim testified Green told him "[you] better empty your pockets before I empty my forty."  Green then pushed Ghanim up against the wall and put the gun to Ghanim's chest.  Ghanim testified he grabbed the gun and pushed it against Green until Green told him to take his hands off the gun.

Ghanim then emptied his pockets, giving thirty-one dollars to the man wearing the black hoodie.  Green ordered Ghanim to take off the necklace chain he was wearing and give that to him as well.  The man in the black hoodie then punched Ghanim, and all four men ran away.

Ghanim ran back to his car and called 911.  Officer Tom Steck was in the area just prior to the call.  He reported he had seen Green and Green's uncle in the convenience store parking lot.  Officer Steck testified Green had been wearing an orange shirt and his uncle was wearing a black hoodie when he saw them.  Officer Steck later viewed the convenience store's surveillance tape and observed Green along with three other man matching Ghanim's description in the store.

The same night, Ghanim completed a photo lineup and identified Green as the person with the gun.

On September 1, 2012, officers executed a search warrant for Green's home. When they did so, they found Green wearing a necklace chain and confiscated it. Ghanim later identified the chain as the one that was taken from him, recognizing the one discolored link that he had added to the chain.

On September 7, 2012, the State filed a trial information charging Green with robbery in the first degree, in violation of Iowa Code sections 711.1 and 711.3. The State later filed an amended trial information charging Green with robbery in the first degree, in violation of Iowa Code sections 711.1 and 711.2.

Jury trial commenced on March 5, 2013. Green was found guilty of robbery in the second degree.

On April 12, 2013, the court entered judgment and sentenced Green to a term of imprisonment of up to ten years with a seventy-percent minimum. Green appeals.

**II. Standard of Review.**

The district court has broad discretion in ruling on a motion for new trial, and thus, our review is for an abuse of discretion. *State v. Nichter*, 720 N.W.2d 547, 559 (Iowa 2006). To establish such an abuse, the challenger must show that the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003).

We review the district court's refusal to submit a requested jury instruction for correction of errors at law. *State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013).

**III. Discussion.**

    **A. Motion for New Trial.**

A district court may grant a new trial where a verdict rendered by a jury is contrary to law or evidence. Iowa R. Crim. P. 2.24(2)(b)(6). "[C]ontrary to . . . evidence" means "contrary to the weight of the evidence." *Reeves*, 720 N.W.2d at 201. In our review, we limit ourselves to the question of whether the trial court abused its discretion; we do not consider the underlying question of whether the verdict is against the weight of the evidence. *Id.* at 203. The district court did not state any reasons for its denial, so we review the record to determine whether a proper basis to affirm the district court's denial exists. *See State v. Maxwell*, 743 N.W.2d 185, 192–93 (Iowa 2008).

In support of his contention the trial court abused its discretion in denying his motion for new trial, Green challenges the reliability of Ghanim's testimony. Green points out inconsistencies between what Ghanim told the police the night of the incident and what Ghanim testified to at trial, specifically whether Ghanim was employed at the time or if he had seen Green earlier in the night at a bar. Ghanim also once told the officers he was not touched by the gun during the robbery, but at trial he testified that it was held to his chest. Finally, Ghanim told the police Green was wearing tight pants on the night in question, although the surveillance tape shows that the defendant was wearing long, baggy shorts.

The district court is not to disturb the jury's verdict "against any mere doubt of its correctness." *See Reeves*, 670 N.W.2d at 203. Our review of the record indicates the greater weight of the evidence supports the jury's verdict. There are some inconsistencies between the statement Ghanim made to the

police on the night in question and his testimony at Green's trial. However, these do not undermine the basis of Ghanim's testimony, much of which was corroborated with outside evidence. Ghanim testified he met Green at a gas station, Green was wearing an orange shirt, and he had a scar under his eye. Later review of the gas station's videotape surveillance confirmed Ghanim's statement. Also, Officer Tom Steck had seen Green at the gas station that night and noted he was wearing an orange shirt at the time. Ghanim also testified he took Green's number and put it in his cell phone, and the police found Green's number in Ghanim's cell phone. Ghanim's testimony that Green pulled a gun out of his waistband and told Ghanim "you're getting robbed" did not change. Furthermore, Ghanim told the police Green had robbed him of thirty-one dollars as well as a chain necklace he had been wearing. Following the incident, Ghanim picked Green out of a photo line-up at the police station and again identified him in the courtroom on the day of trial. Although no gun was found, the police recovered the chain necklace from Green's home when they later executed a search warrant.

"Except in the extraordinary case, where the evidence preponderates heavily against the verdict, trial courts should not lessen the jury's role as the primary trier of facts and invoke their power to grant a new trial." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). This is not such a case. The district court did not abuse its discretion in overruling Green's motion for new trial.

**B. Jury Instruction.**

In a criminal case, the district court is required to instruct the jury as to the law applicable to all material issues in the case. *State v. Marin*, 788 N.W.2d 833, 837 (Iowa 2010); *see* Iowa R. Civ. P. 1.924; *see also* Iowa R. Crim. P. 2.19(5)(f). Instructions must correctly state the law, but they do not need to contain or mirror the precise language of the applicable statute. *State v. Schuler*, 774 N.W.2d 294, 289 (Iowa 2009). "Under Iowa Law, a court is required to give a requested instruction when it states a correct rule of law having application to the facts of the case and when the concept is not otherwise embodied in other instructions." *Herbst v. State*, 616 N.W.2d 582, 585 (Iowa 2000). We consider the jury instructions as a whole. *State v. Fintel*, 689 N.W.2d 95, 104 (Iowa 2004).

Green requested the district court include Iowa State Bar Association's Criminal Uniform Jury Instruction Numbers 200.42 and 200.43 (2004), which deal with contradictory statements of a non-party. Instruction 200.42 provides:

> You have heard evidence claiming [name of witness] made statements before this trial while not under oath which were inconsistent with what the witness said in this trial.
> Because the witness did not make the earlier statements under oath, you may use them only to help you decide if you believe the witness.
> Decide if the earlier statements were made and whether they were inconsistent with testimony given at trial. You may disregard all or any part of the testimony if you find the statements were made and they were inconsistent with the testimony given at trial, but you are not required to do so.
> Do not disregard the testimony if other evidence you believe supports it, or if you believe it for any other reason.

And Instruction 200.43 provides:

> You have heard evidence claiming [name of witness] made statements before the trial while under oath which were inconsistent with what [name of witness] said in this trial. If you find

these statements were made and were inconsistent, then you may consider them as part of the evidence, just as if they had been made at trial.

You may also use these statements to help you decide if you believe [name of non-party witness]. You may disregard all or any part of the testimony if you find the statements were made and were inconsistent with the testimony given at trial, but you are not required to do so. Do not disregard the trial testimony if other evidence you believe supports it or you believe it for any reason.

The district court denied Green's request to include these instructions. The court made it clear Green could argue about any alleged inconsistencies he had perceived in witnesses' testimony but worried providing the requested instructions would be redundant as the court already provided the following instruction:

Decide the facts from the evidence. Consider the evidence using your observations, common sense and experience. Try to reconcile any conflicts in the evidence; but if you cannot, except the evidence you find more believable. In determining the facts, you may have to decide what testimony you believe. You may believe all, part or none of any witness's testimony. There are many factors which you may consider in deciding what testimony to believe, for example:
1. Whether the testimony is reasonable and consistent with other evidence you believe.
*2. Whether a witness has made inconsistent statements.*
3. The witness's appearance, conduct, age, intelligence, memory and knowledge of the facts.
4. The witness's interest in the trial, their motive, candor, bias and prejudice.

(Emphasis added.) *See* Criminal Uniform Jury Instruction No. 100.7.

"If testimony elicited on cross-examination is 'at variance with the plain inference in prior statements' made outside the presence of the jury, then the impeachment instruction must be given; the statements must 'materially' vary." *State v. Hardin*, 569 N.W.2d 517, 521 (Iowa Ct. App. 1997) (quoting *State v. Cuevas,* 282 N.W.2d 74, 81-82 (Iowa 1979)). Here, defense counsel failed to

identify any material variance in the testimony of a specific witness. Moreover, the variances identified upon appeal do not appear to be material or shown to be material. On this record, and because the district court gave Uniform Jury Instruction No. 100.7 and allowed Green to argue any alleged inconsistencies, the district court did not err in denying Green's requested instructions. *See Herbst*, 616 N.W.2d at 585.

## IV. Conclusion.

We find the district court's denial of Green's motion for a new trial was not an abuse of discretion because the weight of the evidence does support the jury's verdict. We also find the district court did not err in failing to give the requested jury instruction. Thus, we affirm.

**AFFIRMED.**