# IN THE COURT OF APPEALS OF IOWA

No. 19-1942
Filed June 16, 2021

**FREDERICK DUITSMAN, JR. and DIANA DUITSMAN,**
 Plaintiffs-Appellees,

**vs.**

**ASHAR AFZAL, M.D., and CEDAR VALLEY MEDICAL SPECIALISTS, P.C.,**
 Defendants-Appellants.
_____

Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.

Defendants appeal the district court's denial of their motion for a new trial in a medical malpractice action. **AFFIRMED.**

George L. Weilein and Timothy C. Boller of Weilein & Boller, P.C., Cedar Falls, and Nancy J. Penner of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellants.

Pressley Henningsen, Farl Greene, Benjamin P. Long, and Laura Schultes of RSH Legal, P.C., Cedar Rapids, for appellees.

Heard by Mullins, P.J., and May and Schumacher, JJ.

**SCHUMACHER, Judge.**

Defendants appeal the district court's denial of their motion for a new trial in a medical malpractice action. Defendants raise claims concerning the jury instructions, expert witness testimony, and statements made during closing arguments. We conclude the district court did not abuse its discretion by denying the motion for new trial. We affirm the jury's decision.

## I.     Background Facts & Proceedings

Dr. Ashar Afzal is a medical doctor who works at Cedar Valley Medical Specialists, P.C. Frederick Duitsman, Jr. received treatment from Dr. Afzal for neck pain. On December 30, 2014, Dr. Afzal performed a radiofrequency ablation (RFA) procedure, which involved placing a needle into Duitsman's neck at the C5-6 level under x-ray guidance. The RFA procedure uses sound waves to burn specific nerves, which gives pain relief for about six months. Dr. Afzal injected a numbing agent mixed with Depo-Medrol at the site to reduce post-procedure discomfort.

Duitsman had no immediate complications and returned home after the procedure. The next day, Duitsman experienced sensory deficits. He was diagnosed with a spinal cord lesion at the C5-6 level. Duitsman does not have any feeling from the waist down.[1] He has problems walking because he cannot feel his legs. Duitsman's condition has continued to deteriorate, and he is expected to use a wheelchair in the future.

On December 2, 2016, Duitsman and his wife, Diana Duitsman, filed an action against Dr. Afzal and Cedar Valley Medical Specialists, P.C., alleging Dr.

---

[1] When Duitsman first woke up on December 31, he had no feeling from the neck down. This resolved itself, but he continues to have no feeling below the waist.

Afzal engaged in medical malpractice during the RFA procedure.[2] The Duitsmans claimed Dr. Afzal injected Depo-Medrol into an artery, causing a blood clot, which caused a spinal stroke. They claimed Dr. Afzal was negligent because he did not use a contrast dye at the time of the injection to make sure he was not injecting the steroid into an artery. Additionally, they claimed Dr. Afzal was negligent because he used Depo-Medrol, a particulate steroid that could cause clots, rather than a non-particulate steroid.

One of the Duitsmans' experts, Dr. Donald Lussky, provided trial testimony by an evidentiary deposition. Prior to trial, Dr. Afzal filed a motion in limine, claiming Dr. Lussky's testimony should be limited because his deposition testimony differed from his expert's report and a discovery deposition. The Duitsmans resisted Dr. Afzal's motion. The district court sustained the objections to certain parts of the evidentiary deposition and ruled those parts of the deposition would be stricken. The remainder of the evidentiary deposition was presented to the jury.

The court gave the parties proposed jury instructions. Dr. Afzal objected to the first specification of negligence in the marshalling instruction on the ground that it was not supported by the evidence. The district court overruled his objections and instructed the jury. Instruction No. 12 stated:

> The Plaintiffs must prove all of the following propositions:
>     1. Dr. Afzal was negligent by failing to meet the standard of care as explained in Instruction No. 14[3] in one or more of the following ways:

---

[2] We will refer to Dr. Afzal and Cedar Valley Medical Specialists together as Dr. Afzal.
[3] Instruction No. 14 stated:

> a. In failing to properly place the cannula needle during the radiofrequency ablation procedure on Plaintiff Fredrick Duitsman, Jr.; or
> b. In choosing to inject a particulate steroid during the radiofrequency ablation procedure without utilizing injection of dye under live fluoroscopy or digital subtraction angiography . . . .
> 2. The negligence was a cause of the damage to the Plaintiffs.
> 3. The amount of damage.

During closing arguments, plaintiffs' counsel stated, "There's a falseness in a defense that throws a bunch of stuff up there that really doesn't relate to what we're dealing with." Plaintiffs' counsel also stated the defense was like a whack-a-mole game and involved "games of distraction, smoke and mirrors." He asked the jurors to "stand up and stand out and do the right thing." Although informed consent and spoliation of evidence were not issues in this case, plaintiffs' counsel talked about consent and Dr. Afzal's failure to keep images from the procedure. The defense asked for a mistrial based on the statements during closing arguments. The court denied the motion.

The jury found Dr. Afzal was negligent and his negligence caused harm to the Duitsmans. The jury awarded the Duitsmans a total of $7,360,000 in damages. Dr. Afzal filed a motion for a new trial, claiming (1) the court submitted a specification of negligence for which there was insufficient evidence; (2) the evidentiary deposition of Dr. Lussky should not have been admitted to the extent his opinions exceeded those in his report; and (3) a mistrial should have been

---

Physicians who hold themselves out as specialists must use the degree of skill, care and learning ordinarily possessed and exercised by specialists in similar circumstances, not merely the average skill and care of a general practitioner.

A violation of this duty is negligence.

granted based on plaintiffs' counsel's improper closing argument. The Duitsmans resisted the motion for a new trial. The district court denied the motion. Dr. Afzal now appeals.

## II.      Specification of Negligence

Dr. Afzal contends the district court erred by submitting a specification of negligence that was not supported by the evidence. He states the instructions permitted the jury to find him negligent for failing to properly place the needle during the RFA procedure on Duitsman. He states there was no evidence the harm to Duitsman was caused by the placement of the needle alone. Dr. Afzal asserts that the Duitsmans' experts—Dr. Fred Dery, Dr. Allen Elster, and Dr. Lussky—stated the spinal lesion was caused by the injection of a particulate steroid into an artery.[4]

"We review alleged errors in jury instructions for the correction of errors at law." *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 570 (Iowa 2017) (quoting *Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 5 (Iowa 2009)). "Any

---

[4] The jury instruction proposed by the plaintiffs originally had nine elements of negligence. The district court removed seven. Regarding the remaining two elements, the defense argued there was one opinion on the standard of care and such was that the defendant injected Depo-Medrol into the radicular artery because the defendant did not use contrast dye with live fluoroscopy or digital subtraction angiography. Defense counsel stated:
> That's his own opinion and testimony. So now to break it down, no one's claiming that Dr. Afzal was in the foramen, so if he says, yeah, he breached the standard of care to put it there, that's not the Duitsman case. So I think if their own expert concedes on cross-examination he's got one opinion and that's it, they don't get two specifications saying basically the same thing.

The plaintiffs responded that the witness,
> specifically said that he went too deep. I had him explain what he meant. He was in the wrong location. He was in the foramen area. . . . and as you know, Your Honor, with every other expert, we confirmed that that would be a breach of the standard of care.

error in the instructions given 'does not merit reversal unless it results in prejudice.'" *Deboom*, 772 N.W.2d at 5 (Iowa 2009) (quoting *Wells v. Enter. Rent-A-Car Midwest*, 690 N.W.2d 33, 36 (Iowa 2004)). There is prejudicial error when the instructions materially misstate the law. *Id.*

"Jury instructions should be formulated so as to require the jury to focus on each specification of negligence that finds support in the evidence." *Eisenhauer ex rel. T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 10 (Iowa 2019) (quoting *Herbst v. State*, 616 N.W.2d 582, 585 (Iowa 2000)). A legal theory should be submitted to the jury if it is supported by substantial evidence. *Id.* "Iowa law requires a court give a requested instruction as long as the instruction is a correct statement of law, is applicable to the case, and is not otherwise embodied elsewhere in the instructions." *Id.* The instructions should not "provide undue emphasis to any particular aspect of the case," or "duplicate specifications adequately encompassed elsewhere in the instructions." *Id.* (citations omitted). "[W]hether a jury instruction sufficiently encompasses each specification of negligence alleged by a plaintiff is determined by the facts of the particular case." *Id.*

> In the ruling on Dr. Afzal's motion for a new trial, the district court stated:

> In this matter, the proper placement of the cannula needle was discussed extensively by almost all the relevant expert witnesses, including Dr. Afzal. Dr. Afzal himself was asked whether it would be a breach of the standard of care to put the needle in the wrong place during the [RFA] procedure and he acknowledged it would be a breach of the standard of care. This admission, together with the extensive discussions on the subject of the needle placement with the other experts, including without limitation Dr. Dery and Dr.

Glaser,[5] provided a clear evidentiary basis in the record for the first specification of negligence in Jury Instruction No. 12.

Dr. Dery testified that the needle went too deep during Mr. Duitsman's procedure and the artery was pierced and the steroid was at least partially injected into the artery causing the spinal cord lesion/stroke. Dr. Glaser acknowledged during cross-examination that if the needle was pushed into the foramen, that would be the wrong spot. Dr. Glaser further acknowledged that if Dr. Afzal stuck his needle in the foramen and caused an infarct, that this would be a major mistake. Dr. Glaser also acknowledged the blood supply to the spinal cord would not be injured if the [RFA] procedure is done appropriately and being in the wrong spot can result in injury to an artery.

The court concluded there was substantial evidence in the record to show the injury to Duitsman would not have occurred if the needle was in the proper location when Dr. Afzal injected the particulate steroid.

We conclude there is substantial evidence in the record to support the instruction stating Dr. Afzal could be found negligent for failing to properly place the needle during the RFA procedure on Duitsman. There was evidence to show the procedure would not have resulted in harm to Duitsman if the needle had been in the correct location when Dr. Afzal injected a particulate steroid. We find no error in Instruction No. 12.

### III. Expert Witness

Dr. Afzal asserts the district court improperly permitted the evidentiary deposition of Dr. Lussky to be presented to the jury. Dr. Afzal claims the evidentiary deposition contains expert opinions that were not disclosed in the expert witness report, made pursuant to Iowa Rule of Civil Procedure 1.508. Dr. Lussky's report, which was dated May 17, 2018, noted, "On December 30, 2014,

---

[5] Dr. Scott Glaser was an expert witness for Dr. Afzal.

Dr. Ashal Afzal performed bilateral [RFAs] and particulate steroid injections at C5-6 and C6-7 levels of Frederick Duitsman's cervical spine," and stated, "It is my medical opinion that Mr. Duitsman's spinal cord injury was caused by the December 30, 2014 procedures."  Dr. Lussky's report gave opinions about Duitsman's medical condition resulting from the spinal cord lesion.

In Dr. Lussky's videotaped evidentiary deposition, taken on July 1, 2019, he stated:

> Q. Doctor, I want to talk to you about what caused Fred's spinal cord injury.  Have you reached a conclusion about what caused the spinal cord injury to the dorsal columns of Fred's neck at the C5-6 level?  A. I have.
> Q. And what is your conclusion?  A. Conclusion is arterial damage from a particulate material injection into radicular artery, damaging the posterial aspect of the spinal cord.
>   . . . .
> Q. And what do you base that opinion on, Doctor?  A. Based on reviewing all the medical records, the procedure, and just common sense that that's what caused this injury to the spinal cord. The needle was in close proximity to the radicular artery, and the radicular artery supplies the spinal cord, and particulate matter was—radicular artery had particulate matter entered in, and then that particulate matter embolized or went to the spinal cord and caused an infarct to his stroke of the spinal cord.

The district court reviewed Dr. Lussky's expert report and his evidentiary deposition.  The court struck some instances of Dr. Lussky's opinions concerning causation and standard of care, as well as some gratuitous comments.  The statements noted above were not excluded by the court's ruling.  The evidentiary deposition, absent the parts excluded by the court's ruling, was presented to the jury.

We review the district court's evidentiary rulings for an abuse of discretion. *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 684 (Iowa 2020).

There is an abuse of discretion when the court's ruling is based on grounds that are unreasonable or untenable. *Andersen v. Khanna*, 913 N.W.2d 526, 536 (Iowa 2018). "A ground is unreasonable or untenable when it is 'based on an erroneous application of the law.'" *Id.* (quoting *Giza v. BNSF Ry.*, 843 N.W.2d 713, 718 (Iowa 2014)).

Iowa Rule of Civil Procedure 1.508(4) provides, "The expert's direct testimony at trial may not be inconsistent with or go beyond the fair scope of the expert's disclosures, report, deposition testimony, or supplement thereto." In *Millis v. Hute*, the plaintiff claimed a defense expert's "evidentiary deposition testimony went beyond the fair scope of the opinions expressed in his written report to their surprise and prejudice." 587 N.W.2d 625, 628 (Iowa Ct. App. 1998). We found the purpose of the rule was "to avoid surprise to litigants and to allow the parties to formulate their positions on such evidence as is available." *Id.* Because the evidentiary deposition was taken several months before the trial date, we found the plaintiffs "had sufficient opportunity to seek further testimony on the disputed issues from their own experts but chose not [to] do so." *Id.* We also concluded the plaintiffs were not prejudiced by the admission of the evidentiary deposition because they presented the testimony of their own experts to counter the testimony of the defendant's expert. *Id.* We determined the district court did not err by admitting the evidentiary deposition of the defendant's expert. *Id.*

An expert's testimony may not go beyond the "fair scope" of the report. *Studer v. DHL Express (USA), Inc.*, No. 07-1810, 2009 WL 775437, at *2 (Iowa Ct. App. Mar. 26, 2009) (citing Iowa R. Civ. P. 1.508(4)). We determine Dr. Afzal had adequate notice from the report of the "fair scope" of Dr. Lussky's opinions. *See*

*W. Realty, Inc. v. Fox*, No. 08-0922, 2009 WL 1676155, at *3 (Iowa Ct. App. June 17, 2009). The report stated Duitsman's spinal cord injury was caused by the RFA procedure. Furthermore, if Dr. Lussky's evidentiary deposition was not exactly the same as his report, he could be impeached by this difference. *See Fox v. Rechkemmer*, No. 16-0849, 2017 WL 4315037, at *6 (Iowa Ct. App. Sept. 27, 2017).

We conclude the district court did not abuse its discretion by denying Dr. Afzal's request to exclude Dr. Lussky's evidentiary deposition.

## IV. Closing Arguments

Dr. Afzal contends the district court should have granted his motion for a mistrial or his motion for a new trial because plaintiffs' counsel made improper closing arguments. He states plaintiffs' counsel made inflammatory and derogatory characterizations of the defense. Dr. Afzal also states that plaintiffs' counsel made statements referring to informed consent and spoliation of evidence, which were not issues in this case.

"We review a district court's denial of a mistrial for an abuse of discretion." *Kinseth v. Weil-McLain*, 913 N.W.2d 55, 66 (Iowa 2018). The court has broad discretion in ruling on a mistrial motion. *Fry v. Blauvelt*, 818 N.W.2d 123, 132 (Iowa 2012). "[T]he trial court has before it the whole scene, the action and incidents of the trial as they occur, and is in a much better position to judge whether the defendant has been prejudiced by misconduct of opposing counsel, if there is such." *Mays v. C. Mac Chambers Co.*, 490 N.W.2d 800, 803 (Iowa 1992) (alteration in original) (quoting *Baysinger v. Haney*, 155 N.W.2d 496, 499 (Iowa 1968)).

"To warrant a new trial based on attorney misconduct, the complained of misconduct 'must have been prejudicial to the interest of the complaining party.'" *Kinseth*, 913 N.W.2d at 66 (quoting *Mays*, 490 N.W.2d at 803). "[U]nless a different result would have been probable in the absence of misconduct, a new trial is not warranted." *Id.* (alteration in original) (quoting *Loehr v. Mettille*, 806 N.W.2d 270, 277 (Iowa 2011)). We consider "the severity and pervasiveness of the misconduct, the significance of the misconduct to the central issues in the case, the strength of the State's evidence, the use of cautionary instructions or other curative measures, and the extent to which the defense invited the improper conduct." *Kipp v. Stanford*, No. 18-2232, 2020 WL 3264319, at *8 (Iowa Ct. App. June 17, 2020) (citation omitted).

During closing argument, plaintiffs' counsel stated:

There's a falseness in a defense that throws a bunch of stuff up there that really doesn't relate to what we're dealing with and it's here in this courtroom right now and it's no longer talking to me, it's daring you. Can you guys take it on? It sits here in this courtroom right now.

Also,

There was a lot of mud thrown up against the wall. A lot of issues came in here where I wanted to stand up and say, why are we talking about this? Why does this matter? Because that's what you've got to tell me. You've got to tell me why this matters. You don't just get to throw stuff. . . . The defense in this case is like that whack-a-mole game. . . . And no matter how good you are, how fast you are, how determined you are, eventually you cannot whack all those moles. But that's a carnival game. It's a game of distraction. It's a game you choose to play even though you know you're gonna lose. And sometimes it works in settings like this. Sometimes we can play games of distraction, smoke and mirrors, but it's not the true story.

We have previously stated:

The single purpose of closing argument is to assist the jury in analyzing, evaluating, and applying the evidence. Thus, when exercising its discretion in determining the proper scope of closing argument, the trial court should give counsel the latitude to make comments and arguments within the framework of the legal issues and evidence introduced at trial. This latitude is compatible with effective advocacy.

*Lane v. Coe Coll.*, 581 N.W.2d 214, 218 (Iowa Ct. App. 1998) (citations omitted).

"Counsel may draw conclusions and argue permissible inferences which reasonably flow from the evidence presented. However, counsel has no right to create evidence or to misstate the facts." *State v. Coleman*, 907 N.W.2d 124, 145 (Iowa 2018).

In the ruling on the motion for a new trial, the district court stated:

The Court, in viewing the Defendants' allegations of misconduct, does not find these went beyond the latitude appropriate for the arguments being made in the context they were made. The Court does not find Plaintiffs' counsel to have improperly vouched personally for or against the veracity and/or credibility of a witness. The Court finds the arguments of Plaintiffs' counsel concerning the merits and justness of the cause to have been reasonably based on the evidence presented at trial and not improper personal opinions.

Also, the court found plaintiffs' counsel did not make improper arguments concerning informed consent or spoliation of evidence, stating

The Court finds the argument by Plaintiffs' counsel relating to those issues was proper in light of the evidence introduced, some by the Defendants, on the issue of the risks of the procedure and the presence or absence of evidence material to the case, specifically the imaging performed during the procedure.

The court determined plaintiffs' counsel's arguments went to the weight of the evidence, which was a proper matter to discuss in the closing arguments.

We find the statements of plaintiffs' counsel came within the wide latitude given to parties during closing arguments. *See Lane*, 581 N.W.2d at 218. The

arguments did not concern matters outside the scope of the evidence introduced during the trial. *See id.* The argument concerning informed consent and spoliation of evidence went to the weight of the evidence in the case. Furthermore, the complained of misconduct was not prejudicial to Dr. Afzal. *See Kinseth*, 913 N.W.2d at 66.

We conclude the district court did not abuse its discretion in denying Dr. Afzal's motion for mistrial and motion for new trial based on the closing arguments.

We affirm the decision of the district court.

**AFFIRMED.**